Colin H. Murray (State Bar No. 159142)
colin.murray@bakermckenzie.com
Anne M. Kelts (State Bar No. 298710)
anne.kelts@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099

John E. Joiner (admitted *Pro Hac Vice*)
jjoiner@wc.com
William P. Ashworth (admitted *Pro Hac Vice*)
washworth@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: +1 202 434 5000
Facsimile: +1 202 434 5029

Attorneys for Defendants
SPRINT SOLUTIONS, INC. and
NEXTEL OF CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CITY OF LOS ANGELES, *ex rel.* RICHARD KNUDSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>SPRINT SOLUTIONS, INC.; NEXTEL OF CALIFORNIA, INC., D/B/A NEXTEL COMMUNICATIONS AND SPRINT NEXTEL; and DOES 1–10,<br><br>Defendants. | Case No. **2:17-cv-00811-TLN-AC**<br><br>**Date Action Was Transferred from Central District of California: April 18, 2017**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**<br><br>Date: September 7, 2017<br>Time: 2:00 p.m.<br>Crtrm: 2, 15th Floor<br>      501 I Street, Sacramento CA<br>Judge: Hon. Troy L. Nunley<br>Trial Date: None set |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ........................................................................................................................ 1

II. FACTUAL AND PROCEDURAL HISTORY ........................................................................ 1

    A.    The Contracts At Issue ............................................................................................... 1

        1.    City Contract I ................................................................................................ 1

        2.    City Contract II ............................................................................................... 3

        3.    City Contract III .............................................................................................. 3

    B.    The City's Allegations ............................................................................................... 4

III. LEGAL STANDARD ............................................................................................................... 5

IV. ARGUMENT ............................................................................................................................ 5

    A.    The City Was Not Entitled To Quarterly Optimization Reports. ............................... 5

        1.    City Contract I ................................................................................................ 6

        2.    City Contract II ............................................................................................... 7

        3.    City Contract III .............................................................................................. 8

    B.    Any Claims Made By Sprint Relating To The Optimization Provisions At Issue Lack The "Objective Falsity" Necessary To State CFCA Claims. ................... 9

    C.    The City Has Not Pleaded Its Claims With Sufficient Particularity ......................... 11

    D.    The City Fails To State A Claim For Unjust Enrichment ......................................... 14

V. CONCLUSION ........................................................................................................................ 15

i

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# TABLE OF AUTHORITIES

**Page No(s).**

**Cases**

*Anderson v. Nationwide Mut. Ins.*,
  No. 212CV01057MCEDAD, 2015 WL 5698058 (E.D. Cal. Sept. 28, 2015) .............................. 5

*ASARCO, LLC v. Celanese Chem. Co.*,
  792 F.3d 1203 (9th Cir. 2015) ...................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................5

*Atel Fin. Corp. v. Quaker Coal Co.*,
  321 F.3d 924 (9th Cir. 2003) (per curiam) ...............................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................5

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014) ...................................................................................................6

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) ......................................................................................................2

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................................................. 5, 9

*Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*,
  114 Cal. Rptr. 2d 109 (Ct. App. 2001) ...................................................................................14

*Crosby v. HLC Props., Ltd.*,
  167 Cal. Rptr. 3d 354 (Ct. App. 2014) .....................................................................................8

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
  No. CIV S-050583 LKK/GGH, 2007 WL 1791699, at *19 (E.D. Cal. June 15,
  2007) .........................................................................................................................................9

*United States ex rel. Fryberger v. Kiewit Pac. Co.*,
  41 F. Supp. 3d 796, 810–11 (N.D. Cal. 2014) .........................................................................5

*State ex rel. Grayson v. Pac. Bell Tel. Co.*,
  48 Cal. Rptr. 3d 427 (Ct. App. 2006) .......................................................................................9

*United States ex rel. Grupp v. DHL Express (USA), Inc.*,
  47 F. Supp. 3d 171, 177–79 (W.D.N.Y. 2014) .......................................................................10

ii

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Hagood v. Sonoma Cty. Water Agency*,
   81 F.3d 1465 (9th Cir. 1996) ..................................................................................................11

*Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*,
   599 F. App'x 720 (9th Cir. 2015) ..............................................................................................6

*Janas v. McCracken (In re Silicon Graphics Inc. Sec. Litig.)*,
   183 F.3d 970 (9th Cir. 1999) .....................................................................................................2

*Klein v. Chevron U.S.A., Inc.*,
   137 Cal. Rptr. 3d 293 (Ct. App. 2012) ....................................................................................14

*United States ex rel. Lamers v. City of Green Bay*,
   168 F.3d 1013 (7th Cir. 1999) .................................................................................................11

*Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*,
   51 Cal. Rptr. 2d 622 (Ct. App. 1996) ......................................................................................14

*United States ex rel. Modglin v. DJO Glob. Inc.*,
   48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014) ...........................................................................14

*Morris v. Allstate Ins.*,
   16 F. Supp. 3d 1095, 1102 .........................................................................................................6

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ...................................................................................................7

*United States ex rel. Platz v. Bank of Am. Corp.*,
   No. 12-CV-08399 (GBD), 2016 WL 1298985 (S.D.N.Y. Mar. 31, 2016) ................................6

*PV Little Italy, LLC v. MetroWork Condo. Ass'n*,
   148 Cal. Rptr. 3d 168 (Ct. App. 2012) ......................................................................................7

*United States ex rel. Roby v. Boeing Co.*,
   100 F. Supp. 2d 619 (S.D. Ohio 2000) ....................................................................................10

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ...................................................................................................6

*Speirs v. BlueFire Ethanol Fuels, Inc.*,
   197 Cal. Rptr. 3d 25 (Ct. App. 2015) ........................................................................................8

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) (per curiam) ..............................................................................13

*United States v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ...................................................................................................12

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
   No. 09-MD-02015-RS, 2015 WL 1744339 (N.D. Cal. Apr. 15, 2015) .....................................8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

iii

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) .................................................................................... 9, 10, 11

*United States ex rel. Yannacopoulos v. Gen. Dynamics*,
   652 F.3d 818 (7th Cir. 2011) .................................................................................................. 9

**Statutes**

31 U.S.C. § 3729 et seq. ................................................................................................................ 9

Cal. Civ. Code § 1639 .................................................................................................................... 6

Cal. Gov't Code § 12651 ................................................................................................................ 9

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ............................................................................. 1, 5, 11, 15

iv

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## I.     INTRODUCTION

Defendants Sprint Solutions, Inc. and Nextel of California, Inc. ("Sprint") seek dismissal of claims brought by the City of Los Angeles, to the extent set forth below. The City contends—erroneously—that Sprint was obligated pursuant to certain wireless services contracts to provide the City with quarterly "optimization reports" identifying the optimal rate plan for each of the City's wireless lines. *See* Consolidated Complaint ("Compl.") ¶¶ 4–7. Sprint was not so obligated, under either the City's direct contracts with Sprint or other, group purchasing contracts incorporated by reference into the City's contracts. The provisions of the Sprint-City contracts that referenced "optimization" made no mention of optimization reports by their plain language, but instead provided only that Sprint would work to "routinely identify" users not on optimal plans and "work with" the City to place them on such plans (and one such provision only required Sprint to act "upon written request" of the City). And the provisions of the group purchasing contacts regarding optimization did not even apply to local entities like the City. This plain language requires dismissal of the City's claims to the extent they are based on a purported obligation to provide quarterly "optimization reports."

The City's claims are deficient for other reasons as well: (1) the contract provisions at issue cannot serve as the basis for claims under the California False Claims Act ("CFCA"), as any violations of those provisions would not satisfy the CFCA's "objective falsity" requirement; (2) the City's CFCA claims, which are fraud claims, are not pleaded with particularity, as required by Rule of Civil Procedure 9(b); and (3) the City's unjust enrichment claim is based only on alleged breaches of written contracts, and thus is not independently sustainable.

## II.     FACTUAL AND PROCEDURAL HISTORY

A.     **The Contracts At Issue**

The City's claims relate to three contracts between the City and Sprint for wireless and related services.

1.     **City Contract I**

On October 27, 2006, the City entered into Contract #58644 with Sprint ("City Contract I"). Compl. ¶ 44. City Contract I contained the following provision:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Optimization: After the initial plan assignment, Nextel/Sprint will routinely identify those users who are not in the most optimized plan and work with the City Department Telephone Coordinators to place users in the most optimized plan.

*Id.* ¶ 45. City Contract I also contained a provision requiring Sprint to provide three types of "Quarterly Reports" to the City Purchasing Agent, none of which related to optimization or rate plans. *See* Sprint's Request for Judicial Notice ("RJN"), Ex. 1 (City Contract I), at 3 (requiring quarterly reports related to expenditures, recycled products, and products sold by certain types of sub-suppliers).[1]

City Contract I was issued "in accordance with" the prices, terms, and conditions of the California Wireless Contract ("CWC"), Compl. ¶ 44, which was a cooperative purchasing agreement between Sprint and the State of California, *id.* ¶¶ 27–28, 41. The CWC incorporated the State's electronic "Request for Proposals," known as "eRFP 5014," as well as Sprint's Final Proposal in response thereto. *Id.* ¶¶ 27, 40. Section 5.11 of the RFP was titled "Agency Reporting Requirements." *Id.* ¶ 30. The "Agency Reporting Requirements" section included a provision (§ 5.11.2) entitled "Wireless Services Optimization Reports." *Id.* ¶ 29. That provision did not extend to the City, as the RFP explicitly provided that "[t]he reporting requirements in this section are *only* applicable to State departments and *not to local agencies*." *See* RJN Ex. 2 (CWC RFP, § 5.11) (emphasis added).

On October 29, 2010, the parties amended City Contract I to extend it "in accordance with" another group purchasing contract, identified as "State of Nevada RFP/Contract #1523 Amendment 5." RJN Ex. 3 (City Contract I, Amendment #4). This amendment did not modify City Contract I's optimization provision. "State of Nevada RFP/Contract #1523," entered into between Sprint and the

---

[1] The Court may consider the underlying contract documents—all referenced in the City's Complaint—on this 12(b)(6) motion. *See* RJN; *see also, e.g., Janas v. McCracken (In re Silicon Graphics Inc. Sec. Litig.)*, 183 F.3d 970, 986 (9th Cir. 1999) (holding that a court may take judicial notice of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [party's] pleading" (internal quotation marks omitted)), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("As it makes sense and comports with existing practice, we hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment." (internal quotation marks omitted)), *overruled in part on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1121 (9th Cir. 2002).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

2

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Lead State of Nevada under the auspices of the Western States Contracting Alliance ("WSCA"), was also known as the "WSCA I Contract" or "WSCA I." WSCA I included a provision in its "Reporting" section that asked bidders to provide a "quarterly optimization report for each wireless service subscriber," without specifying which entities were entitled to reports under the provision. RJN Ex. 4 (WSCA I RFP, § 3.2.2.2). Amendment #1 to the WSCA I RFP included a series of questions and answers from potential bidders related to the RFP terms. *Id*. (WSCA I RFP, Amendment 1). In response to the question, "Please explain what level of detail is required for the reports referenced in Section 3.2.2.2. Also, should these reports [i.e., those referenced in Section 3.2.2.2 of the RFP] be submitted to the Lead State and/or all the participating WSCA states," Nevada made clear that reports need only be provided to the Lead State (i.e., Nevada), and not to other participating entities such as the City: "Please refer to Attachment F – Quarterly Reports. *Reports should be submitted to the Lead State*." *Id.* at 9 (emphasis added).

### 2. City Contract II

Following the expiration of City Contract I, the City entered into Contract #59288 ("City Contract II") with Sprint, effective July 1, 2011. Compl. ¶ 95. City Contract II adopted the prices, terms, and conditions of the WSCA I Contract. *See* RJN Ex. 5 (City Contract II), at 1. Like City Contract I, City Contract II contained a provision regarding "Quarterly Reports" that did not include any reference to "optimization." *Id.* at 4 (requiring the provision of reports related to expenditures and products manufactured by certain sub-suppliers). Unlike its predecessor, moreover, City Contract II did not even reference "optimization."

### 3. City Contract III

On February 1, 2013, the City entered into a third contract with Sprint, known as Contract #59510 ("City Contract III"). This third contract provided as follows regarding optimization:

OPTIMIZATION:

> After the initial plan assignment, Sprint Solutions will, *upon written request of the City* (but in no event more than once per quarter), routinely identify those users that are not in the most optimized plan and work with the City Department Telephone Coordinators to place users in the most optimized plan.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

3

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Compl. ¶ 95; RJN Ex. 6 (City Contract III), at 3 (emphasis added).  This provision is unambiguous—Sprint was obligated at most to work with the City on "optimization" "upon written request" and then, not more than once per quarter.  City Contract III also adopted the prices, terms, and conditions of a second WSCA contract, Contract Number 1907 ("WSCA II").  RJN Ex. 6 at 1.

The WSCA II RFP contained an optimization provision similar to that in WSCA I.  *See* RJN Ex. 7 (WSCA II RFP, § 3.3.2.2).  Nothing in the WSCA II RFP suggested the optimization provision applied to entities such as the City, and nothing in the WSCA II RFP abrogated the guidance provided in Amendment #1 to the WSCA I RFP with respect to the scope of the optimization-reporting provision.

City Contract III remained in force until October 31, 2016.  RJN Ex. 6 (City Contract III), at 1.[2]

**B.    The City's Allegations**

On September 13, 2013, Relator Richard Knudsen filed three separate CFCA actions on behalf of the City in Los Angeles County Superior Court against Sprint, Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), and New Cingular Wireless National Accounts, LLC, d/b/a Cingular Wireless, now known as AT&T Mobility National Accounts LLC ("AT&T").  Three years later, on September 9, 2016, the City intervened and filed a "Consolidated Complaint in Intervention" in the three state-court cases, adding claims for breach of contract, unjust enrichment, and unfair business practices (although the actions were never consolidated by the state court).  On October 7, 2016, Defendants removed the three cases to federal court.  On April 18, 2017, this case was transferred from the Central District to the Eastern District, and on April 27, 2017 it was reassigned to this Court.

The heart of the City's Complaint is the allegation that Sprint violated the CFCA and breached its contracts with the City by failing to provide "rate plan optimization reports that would permit it to purchase wireless services at the lowest cost available each quarter."  Compl. ¶ 4.[3]

---

[2] The City does not assert claims related to any agreement post-dating October 31, 2016.
[3] *See also, e.g.*, Compl. ¶ 11 (alleging that "[t]he CWC and WSCA contracts each required the Carrier Defendants to provide 1) rate plan optimization reports, and 2) service at the 'lowest cost available'"); ¶ 26 (claiming that "[t]he contracts thus explicitly placed the burden to provide rate plan optimization reports on the Carriers"); ¶¶ 29–33 (asserting that City Contract I, together with

4

Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

### III. LEGAL STANDARD

A plaintiff must plead "enough facts [in the complaint] to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The heightened pleading standard of Rule of Civil Procedure 9(b) applies to the City's CFCA claims. *See United States ex rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 810–11 (N.D. Cal. 2014) (dismissing CFCA claims for failure to satisfy Rule 9(b)). Rule 9(b) requires that the City's factual allegations "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The City must plead "'the who, what, when, where, and how of the misconduct charged,'" as well as "'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

### IV. ARGUMENT

#### A. The City Was Not Entitled To Quarterly Optimization Reports.

Sprint was not contractually obligated to provide quarterly "optimization reports" to the City under the agreements at issue.

The interpretation of a contract is a question of law for the court. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003) (per curiam). *See also Anderson v. Nationwide Mut. Ins.*, No. 212CV01057MCEDAD, 2015 WL 5698058, at *9 (E.D. Cal. Sept. 28, 2015) (when the facts are undisputed, "the interpretation of a contract . . . is a question of law" (internal quotation

---

the CWC, "required the Carriers to provide optimization reports to the City automatically"); ¶ 48 (concluding that "[b]oth [WSCA] contracts required the Carrier Defendants to prepare quarterly 'optimization reports' identifying the lowest cost rate plan for each user or phone, as well as to provide service at the 'lowest cost available'"); ¶ 108 (claiming that "the Carrier Defendants stated throughout the parties' contracts that they would provide optimization reports"); ¶ 122 (alleging that "Carrier Defendants knew and understood the contracts required them to provide optimization reports for the City every quarter, as they attested when they executed the RFP and RFO responses and the contracts").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

5

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

marks omitted)); *Morris v. Allstate Ins.*, 16 F. Supp. 3d 1095, 1102 n.3 (C.D. Cal. 2014) ("'[i]nterpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence'" (alteration in original) (quoting *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 286 (Ct. App. 1998))). The Court must interpret a contract to "'give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.'" *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting Cal. Civ. Code § 1636). "The intent of the parties is determined 'solely from the written provisions of the contract.'" *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1212 (9th Cir. 2015) (quoting *AIU Ins. v. Super. Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (en banc)); *see also* Cal. Civ. Code § 1639. Where, as here, the contractual provisions at issue are unambiguous, the Court may resolve the issue on a motion to dismiss. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017–18 (9th Cir. 2012) (citing *Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 895 (Ct. App. 2010)) (affirming dismissal where contract unambiguously barred claims against third parties); *Block*, 747 F.3d at 1138 (affirming dismissal of contract claim where provisions did not constitute enforceable promises); *Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, 599 F. App'x 720, 721 (9th Cir. 2015) (affirming dismissal where contract not reasonably susceptible to plaintiff's interpretation).[4]

### 1. **City Contract I**

City Contract I did not require Sprint to provide optimization reports to the City. The "Optimization" clause of City Contract I provided only that Sprint "routinely identify" users "not in the most optimized plan" and "work with" City Department Telephone Coordinators to "place users in the most optimized plan." Compl. ¶ 45. This provision on its face does not require Sprint to provide *any* reports to the City, let alone mandatory quarterly "optimization" reports. City Contract I also contained explicit provisions related to "Quarterly Reports" that requested certain types of reports be provided to the City on a quarterly basis—none of which related to optimization. *See* RJN

---

[4] *See also United States ex rel. Platz v. Bank of Am. Corp.*, No. 12-CV-08399 (GBD), 2016 WL 1298985, at *5 n.9 (S.D.N.Y. Mar. 31, 2016) (the meaning of a contractual provision in a false claims case presents a question of law capable of resolution on a motion to dismiss) (citing *Mikes ex rel. United States v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

6

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Ex. 1 at 3. *See also PV Little Italy, LLC v. MetroWork Condo. Ass'n*, 148 Cal. Rptr. 3d 168, 185 (Ct. App. 2012) (noting that "the familiar maxim, *expressio unius est exclusio alterius* (the inclusion of one thing implies exclusion of others), applies to contract interpretation"); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) ("The California Supreme Court has observed that 'the rule of construction *expressio unius est exclusio alterius*; i.e., that mention of one matter implies the exclusion of all others' is 'an aid to resolve the ambiguities of a contract.'" (italics added) (quoting *Steven v. Fid. & Cas. Co. of N.Y.*, 377 P.2d 284, 289 (Cal. 1962))).

Nor did the optimization-reporting provisions of the CWC impose an obligation on Sprint to provide quarterly optimization reports to the City. Section 5.11 of that contract, which governed "Agency Reporting Requirements," including "Wireless Services Optimization Reports," makes clear that "[t]he reporting requirements in this section are *only* applicable to State departments and *not to local agencies*." See RJN Ex. 2 at § 5.11 (emphases added). While the City acknowledges that local agencies (such as the City) were not entitled to optimization reports under the CWC's optimization-reporting provision, it goes on to allege that it "exercised [an] option" under the CWC by entering into City Contract I, which it describes as "requir[ing] [Sprint] to provide optimization reports to the City automatically." Compl. ¶ 29. This assertion has no basis in the governing contracts—no language in City Contract I purports to "exercise an option" with respect to the CWC's optimization-reporting provision; City Contract I merely incorporates the terms and conditions of the CWC Contract, including the language that makes clear that its optimization-reporting provisions do not apply to local agencies such as the City. RJN Ex. 1 at 1.

### 2. **City Contract II**

City Contract II likewise did not require Sprint to provide quarterly "optimization" reports to the City—it does not reference optimization, and its "quarterly reports" requirement does not reference optimization reports. As for WSCA I, its optimization-reporting provision did not extend to the City, but only to the "Lead State" of Nevada, as Nevada made clear in response to a specific question on the topic in Amendment #1 to the WSCA I RFP. RJN Ex. 4 at 9.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

7

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

### 3. City Contract III

City Contract III also did not require Sprint to provide quarterly "optimization" reports to the City. The "Optimization" clause in City Contract III required Sprint to act only "*upon written request of the City* (but in no event more than once per quarter)," and even then did not require the submission of optimization *reports* in response to such a written request. RJN Ex. 6 at 3 (emphasis added).[5] Nowhere in its 166-paragraph Complaint does the City allege that it ever made a written request to Sprint to identify users who were not on an optimal rate plan, let alone that Sprint ever refused such a request. This fundamental defect is fatal to each and every one of the City's claims under City Contract III.[6]

Despite the City's allegation to the contrary, *see* Compl. ¶¶ 48, 92, the WSCA II Contract did not impose an independent duty on Sprint to provide quarterly optimization reports to the City (whether or not requested). The issue of optimization was addressed expressly in the City's negotiated contract with Sprint (City Contract III), and that unambiguous language—which explicitly limited Sprint's duties with respect to "optimization" to working with the City "upon written request"—cannot be contravened by a vague, non-specific reference to the terms and conditions of WSCA II. To read the WSCA contract to create such an expressly conflicting obligation would violate established principles of contractual interpretation. *Cf. Speirs v. BlueFire Ethanol Fuels, Inc.*, 197 Cal. Rptr. 3d 25, 40 (Ct. App. 2015) (rejecting contract interpretation that would cause conflict between provisions); *see also Crosby v. HLC Props., Ltd.*, 167 Cal. Rptr. 3d 354, 360 (Ct. App. 2014) (courts should "avoid interpretations that render any portion superfluous, void or inexplicable" (internal quotation marks omitted)); *accord In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, No. 09-MD-02015-RS, 2015 WL 1744339, at *10 (N.D. Cal. Apr. 15, 2015). And in any event, the provisions are not in conflict, as WSCA II's

---

[5] Like the provision in City Contract I, the "optimization" clause in City Contract III only asked Sprint to "routinely identify" users not in optimal plans and "work with" the City to place them in plans (assuming that the City requested in writing that Sprint do so). RJN Ex. 6 at 3.
[6] Each of the City's five claims for relief incorporates and relies upon the same set of allegations. *See* Compl. ¶¶ 142, 147, 152, 157, 163.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

8

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

quarterly optimization-reporting provision, like its predecessor in WSCA I, requires the provision of reports only to the "Lead State" of Nevada and not to the City.[7]

In sum, the Court should dismiss all of the City's claims against Sprint, to the extent based on an alleged duty to provide the City with quarterly "optimization" reports.

**B.  Any Claims Made By Sprint Relating To The Optimization Provisions At Issue Lack The "Objective Falsity" Necessary To State CFCA Claims.**

A fundamental requirement of the CFCA is that there must be a "falsity" in the relevant claim or statement.  *See* Cal. Gov't Code § 12651(a)(1); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011);[8] *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  The falsity must be actual—thus, "the statement or conduct alleged must represent an objective falsehood." *Wilson*, 525 F.3d at 376; *see also United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011); *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV S-050583 LKK/GGH, 2007 WL 1791699, at *19 (E.D. Cal. June 15, 2007).

In false claims actions involving alleged breaches of contract, this means that the contractual terms at issue must be clear and unambiguous—thus, any statement regarding compliance with those terms could be deemed either objectively true or objectively false.  In other words, if there is a "disputed legal question" of whether a party complied with a "general [or] . . . vague" contractual term, that term cannot form the basis of a false claims action.  *See Wilson*, 525 F.3d at 377–78 (internal quotation marks omitted).  "[M]ere allegations of poor and inefficient management of contractual duties are not actionable . . . [and] imprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false . . . ." *Id.* at 377 (internal quotation marks omitted).  Similarly, "[e]xpressions of opinion . . . or statements as to conclusions about

---

[7] Because the WSCA II Contract does not require the provision of optimization reports to entities other than the Lead State of Nevada, the fact that City Contract III referenced the WSCA II RFP (generally, without respect to the optimization-reporting or any other particular provision) in its "quarterly reports" section is immaterial.

[8] California's FCA is "'patterned on a similar federal statutory scheme (31 U.S.C. § 3729 et seq.).'" *State ex rel. Grayson v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 430 n.3 (Ct. App. 2006) (quoting *City of Pomona v. Super. Ct.*, 107 Cal. Rptr. 2d 710, 716 (Ct. App. 2001)), *as modified* (Sept. 12, 2006).  "Given the 'very close similarity of California's act to the federal act, it is appropriate to turn to federal cases for guidance in interpreting the act.'" *Id.* (quoting *City of Pomona*, 107 Cal. Rptr. 2d at 716).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

9

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

which reasonable minds may differ cannot be false." *United States ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619, 625 (S.D. Ohio 2000) (citing *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1420–21 (9th Cir. 1992), *overruled en banc on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015)), *aff'd*, 302 F.3d 637 (6th Cir. 2002).

In *Wilson*, for example, the Fourth Circuit held at the motion-to-dismiss stage that promises of compliance with vague, imprecise contractual provisions could not constitute objectively false statements:

> Relators contend that the completed DD Form 1155 constitutes a false statement because KBR agreed to the maintenance conditions in the contract even though it knew it would not, and later did not, abide by those terms. However, this assertion *rests not on an objective falsehood*, as required by the FCA, *but rather on Relators' subjective interpretation of KBR's contractual duties*. Given the imprecise nature of the general maintenance provisions at issue here, it is not exactly clear what would qualify as adequate (or inadequate) maintenance under Task Order 43. . . . Consequently, the question of whether KBR performed sufficient maintenance under the contract represents, at the very least, "a disputed legal question" about the "inefficient management of [one's] contractual duties." This is precisely the sort of claim that courts have determined not to be a false statement under the FCA.

*Wilson*, 525 F.3d at 377 (emphases added) (brackets in original) (citing *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999)). Ultimately, the Fourth Circuit did not permit the *Wilson* relators to proceed with their proposed FCA claims because the contractual provisions at issue could not give rise to an objective falsehood. 525 F.3d at 383 (affirming the district court's denial of relators' motion to file an amended complaint including FCA claims); *see also United States ex rel. Grupp v. DHL Express (USA), Inc.*, 47 F. Supp. 3d 171, 177–79 (W.D.N.Y. 2014) (dismissing FCA claims rooted in an alleged breach of contract because the claims hinged on relator's subjective interpretation of an "imprecise contractual provision" and thus lacked objective falsity (internal quotation marks omitted)), *aff'd*, 604 F. App'x 40 (2d Cir. 2015).

Here, the City appears to assert either that Sprint made false statements regarding its intent to comply with the optimization provisions at issue, or that Sprint submitted "false" claims because Sprint impliedly certified in each claim for payment that Sprint was in compliance with these contractual provisions when it was not. As the City concedes, *see* Compl. ¶¶ 45, 95, however, the

10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

optimization provisions in City Contracts I and III at most obligate Sprint to "routinely identify those users who are not on the most optimized plan," and "work with" the City to place users on the most optimized plan. The contracts do not define the terms "routinely identify," "work with," or "most optimized," nor do they specify the manner in which Sprint should communicate its user identifications to the City. Although these provisions on their face do not require the provision of quarterly reports, they in addition are not the type of specific, objective provisions against which claims of intended or actual compliance can readily be measured as true or false. Here, just as in *Wilson*, "it is not exactly clear what would qualify" as routine identification, or an adequate effort to work with the City, "[g]iven the imprecise nature of the . . . provisions at issue." 525 F.3d at 377. Similarly, while Sprint believes the CWC and WSCA contracts clearly do not require the provision of optimization reports to the City, at most, those provisions involve a "disputed legal issue; that is not enough to support a reasonable inference that [a statement or claim] was *false* within the meaning of the [CFCA]." *Hagood*, 81 F.3d at 1477; *see also United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("[D]ifferences in interpretation growing out of a disputed legal question are . . . not false under the [Federal] FCA."). And even if the optimization-reporting provisions of the CWC and WSCA contracts were found to apply to the City (which Sprint disputes and would be contrary to the plain language of those contracts), the issue is at best a "difference[] in interpretation growing out of a disputed legal question," which is not enough for false claims liability.

The references to optimization in the contracts cannot provide the objective falsity that is a prerequisite to a false claims action. The City's CFCA claims arising under those contracts therefore fail to establish actual, objective falsity and should be dismissed as a matter of law.

### C. The City Has Not Pleaded Its Claims With Sufficient Particularity.

The City's CFCA allegations separately fail because they do not satisfy Rule 9(b)'s heightened pleading requirement.

First, the City contends primarily, if not exclusively, that Sprint failed to provide quarterly optimization reports. But the City cannot plead contractual noncompliance—much less fraud—with particularity by pointing to an obligation that did not exist. The City devotes 27 of the 39 pages in

11

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

the Complaint to general background and a description of various contract provisions and documents (primarily Requests for Proposal), only some of which are relevant to its claims. Compl. ¶¶ 1–96, 125–133. The remainder is consumed with allegations that the "Carrier Defendants" (collectively) failed (and thus, by hindsight, must have falsely promised) to provide quarterly optimization reports meeting the specifications outlined in the various requests for proposal. But as discussed above, the City's contracts with Sprint did not require quarterly reports. And the City's allegations, no matter how lengthy or detailed, do not allege with particularity that Sprint fraudulently promised to comply or certified compliance with an obligation under City Contract I to "routinely identify" users not on the most optimal plan, or that Sprint refused a written request to do the same under City Contract III.

Second, the City impermissibly lumps together Defendants and fails to articulate how Sprint failed to comply with the contract provisions at issue. The City alleges in conclusory fashion that, collectively, the Carrier Defendants "did not identify the optimal rate plan for each line of service on a quarterly or other routine basis," Compl. ¶ 97, and that they failed to "direct that rate plan assignments are analyzed and new rate plan assignments are recommended each quarter or routinely," *id.* ¶ 109(c). These allegations are insufficient. "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *United States v. Corinthian Colls.,* 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (per curiam)).[9] In any event, the City's support for these allegations once again relates exclusively to Defendants' alleged failure to provide quarterly optimization *reports*. *See* Compl. ¶¶ 98–108.

In the rare instances in which the City does differentiate between Defendants, it either fails to mention Sprint or offers allegations that are inconsistent with assertions contained elsewhere in the Complaint. For example, the City alleges that Defendants provided various types of reports to the

---

[9] Even the City's allegations relating to "optimization reports" impermissibly lump each of the Defendants together and include conclusory statements such as "the Carrier Defendants did not routinely produce such reports and the City did not receive them." Compl. ¶ 98; *see also id.* ¶ 109 (concluding that "[e]ach Carrier Defendant" failed to take certain steps to comply with its purported obligations, without providing factual support as to any defendant). Allegations that are specific to other defendants, such as those relating to allegedly "false or misleading" reports submitted to the City, are irrelevant to the City's claims against Sprint. *Id.* ¶¶ 102, 105, 106.

12

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

City that were not true "optimization reports," because they allegedly did not conform to purported requirements in the requests for proposal or to the "well-recognized meaning [of 'optimization reports'] in the wireless industry."  Compl. ¶¶ 98–100.  But the examples that follow have nothing to do with Sprint.  *See id.* ¶¶ 102, 105, 106; *cf. Swartz*, 476 F.3d at 765 (concluding that complaint failed to satisfy Rule 9(b) with respect to two of four defendants because it was "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to [certain defendants]").

The City's conclusory allegations that Sprint was unwilling or unable to "routinely identify" users who were not on the most optimal plan lack not only particularity but also plausibility, as they are contradicted by the City's allegations elsewhere in the Complaint.  The City's allegation that "the Carrier Defendants sporadically prepared reports related to rate plan selections, often in response to requests from City departments or representatives," Compl. ¶ 98, directly contradicts the City's assertion that Sprint did not "work with" the City to place users on the optimal rate plans as required by City Contracts I and III.  While the City insists that the reports Defendants provided were not "optimization reports" as defined in the CWC and WSCA master contracts, it cannot and does not contest that those reports were part of an effort to "work with" the City.  City Contracts I and III did not specify how Sprint was to accomplish that objective, and the City has alleged no facts suggesting that Sprint did not, in fact, do so.

Additionally, the City asserts broadly that Defendants, collectively, "were not prepared to analyze rate plan assignments for all City users quarterly or routinely, as the contracts required, when the Carrier Defendants responded to the RFPs or executed the contracts."  Compl. ¶ 110.  The only "facts" alleged by the City in support of this assertion appear in Paragraphs 120 and 121, in which the City pleads that certain of Sprint's reporting tools—which were mentioned by Sprint in *entirely unrelated* sections of its response to the WSCA I RFP—were not capable of producing optimization reports to the City's apparent specifications.  Once again, the allegation that Sprint did not or could not produce "optimization reports" to the City is irrelevant, as the contracts did not require them.

In sum, the Complaint fails to articulate *any* basis for the City's allegations that Sprint

13

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

breached the applicable contract provisions, other than Sprint's alleged failure to provide optimization reports, which is irrelevant.  Specifically, the City has failed to allege "the manner in which [Sprint's statements of compliance were] untrue and misleading, or the circumstances indicating that [they were] false." *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014), *aff'd*, No. 15-55840, --- F. App'x ---, 2017 WL 745715 (9th Cir. Feb. 27, 2017).  Accordingly, the City's first and second claims for relief should be dismissed.

### D.     The City Fails To State A Claim For Unjust Enrichment

The City's claim for unjust enrichment is based entirely on Sprint's alleged breaches of written contracts, *see* Compl. ¶¶ 157-162, 163-166, and for that reason cannot stand, even at the pleadings stage.  *See, e.g.*, *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330–32 (Ct. App. 2012); *Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*, 51 Cal. Rptr. 2d 622, 628 (Ct. App. 1996); *see also Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125 (Ct. App. 2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights.").  The City's breach-of-contract claim "plead[s] the existence of an enforceable agreement" while its unjust-enrichment claim "d[oes] not deny the existence or enforceability of that agreement." *Klein*, 137 Cal. Rptr. 3d at 332.  The City accordingly is "precluded from asserting a quasi-contract claim under the theory of unjust enrichment." *Id.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

14

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION

## V. CONCLUSION

For the foregoing reasons, Sprint respectfully requests that the Court dismiss (1) each of the City's claims, to the extent based on an alleged duty to provide quarterly "optimization reports"; (2) the City's CFCA claims, for lack of the requisite "objective falsity" and for failure to plead fraud with the particularity required by Rule 9(b); and (3) the City's unjust enrichment claim, in its entirety.

Dated: June 30, 2017

**BAKER & McKENZIE LLP**
Colin H. Murray
Anne M. Kelts

**WILLIAMS & CONNOLLY LLP**
John E. Joiner
William P. Ashworth


By: /s/ William P. Ashworth
    William P. Ashworth
Attorneys for Defendants
SPRINT SOLUTIONS, INC. and
NEXTEL OF CALIFORNIA, INC.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

15

Case No. 2:17-cv-00811-TLN-AC
SPRINT MOTION TO DISMISS CONSOLIDATED COMPLAINT IN INTERVENTION