NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
ADAM M. SHAPIRO (SBN 267429)
ashapiro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for City of Los Angeles*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES *ex rel.* RICHARD KNUDSEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SPRINT SOLUTIONS, INC.; NEXTEL OF CALIFORNIA, INC. dba NEXTEL COMMUNICATIONS AND SPRINT NEXTEL; and DOES 1-10,<br><br>　　　　Defendants. | CASE NO. 2:17-cv-00811-TLN-AC<br><br>**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date:　　September 7, 2017<br>Time:　　2:00 p.m.<br>Ctrm:　　2, 15th Floor<br>Judge:　　Hon. Troy L. Nunley |

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 1

III. LEGAL STANDARD .......................................................................................... 5

    A. The False Claims Act is Construed Broadly ............................................. 5

    B. Rules 8(a) and 12(b) ................................................................................. 6

    C. Rule 9(b) ................................................................................................... 6

IV. ARGUMENT ...................................................................................................... 7

    A. The City Was Entitled to Quarterly Optimization Reports ....................... 7

        1. Principles of Contract Interpretation ............................................ 7

        2. City Contract I Requires Sprint to Routinely Provide Optimization and Optimization Reports ................................................................ 8

        3. City Contract II Required Sprint to Provide Quarterly Optimization Reports ....................................................................................... 9

            a. The Plain Language of the Optimization Term Confirms the City's Reading ....................................................... 10

            b. The City's View Is Consistent with the Purpose of Cooperative Purchasing Agreements and WSCA I's Structure ........... 10

            c. Sprint's Contrary Interpretation Is Unreasonable ............. 12

        4. City Contract III Required Sprint to Provide the City with Optimization Reports Upon Request ............................................ 13

    B. Sprint's Claims Were Objectively False ................................................. 15

    C. The City's Claims Are Pleaded with Sufficient Particularity ................... 17

    D. The City May Plead Unjust Enrichment in the Alternative ...................... 20

V. CONCLUSION ................................................................................................. 20

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1

## TABLE OF AUTHORITIES

2

**Page No(s).**

3

**Cases**

*AIU Ins. Co. v. Superior Court*,

4
   51 Cal. 3d 807 (1990) .......................................................................................... 7

5

*Aragon-Hass v. Family Sec. Ins. Servs., Inc.*,

6
   231 Cal. App. 3d 232 (Ct. App. 1991) ................................................................. 8

7

*Ashcroft v. Iqbal*,

8
   556 U.S. 672 (2009) ............................................................................................. 6

*Bell Atl. Corp. v. Twombly*

9
   550 U.S. 544 (2007) ............................................................................................. 6

10

*City of Pomona v. Superior Court*,

11
   89 Cal.App.4th 793 (2001) .................................................................................. 5

12

*Concept Chaser Co. v. Hoyu Am. Co.*,

13
   No. CV0807702ODWPLAX, 2009 WL 10673192, at *3 (C.D. Cal. Apr. 3, 2009) .................. 8

14

*Ebeid v. Lungwitz*,

   616 F.3d 993 (9th Cir. 2010) ........................................................................... 6, 7

15

*Feller v. Transamerica Life Ins. Co.*,

16
   No. 216CV01378CASAJWX, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016) ................ 12

17

*Gaines v. Home Loan Ctr., Inc.*,

18
   No. SACV08667AHSRNBX, 2010 WL 11506442, at *7 (C.D. Cal. May 24, 2010) ................ 8

19

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*,

20
   59 Cal.4th 277 (2014) .......................................................................................... 7

21

*In re GlenFed Inc. Securities Litigation*

   42 F.3d 1541 (9th Cir. 1994) ............................................................................... 6

22

*Klein v. Chevron U.S.A., Inc.*,

23
   202 Cal.App.4th 1342 (2002) ............................................................................ 20

24

*Miller v. Glenn Miller Prods., Inc.*,

25
   454 F.3d 975 (9th Cir. 2006) ............................................................................. 16

26

*Moyo v. Gomez*,

   32 F. 3d 1382 (9th Cir. 1994) ....................................................................... 6, 18

27

*Odom v. Microsoft Corp.*,

28
   486 F.3d 541 (9th Cir. 2006) ............................................................................... 7

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

ii

*Peel v. Brooksamerica Mortgage Corp.*,
   788 F. Supp. 2d 1149 (C.D. Cal. 2011) ...................................................................... 6

*Starr v. Baca*,
   652 F. 3d 1202 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012) .......................... 6

*State of California ex rel. OnTheGo Wireless, LLC v. Cellco Partnership, et al.*,
   Case No. 34-2012-00127517 ................................................................................ 5, 9

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................................ 19

*U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*,
   929 F.2d 1416 (9th Cir. 1991) .............................................................................. 17

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) .............................................................................. 15

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*
   525 F.3d 370 (4th Cir.2008) ................................................................................ 15

*U.S. v. Neifert-White Co.*,
   390 U.S. 228 (1968) ............................................................................................ 6

*U.S. v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ................................................................................ 20

*United States ex rel. Campie v. Gilead Sciences*,
   2017 U.S. App. LEXIS 12163, at *28 (9th Cir. July 7, 2017) .................................... 15

*United States ex rel. Chilcott v. KBR, Inc.*,
   No. 09-4018, 2013 U.S. Dist. LEXIS 153331, at *22–23 (C.D. Ill. Oct. 24, 2013) .................. 17

*United States ex rel. Oliver v. Parsons Co.*,
   195 F.3d 457 (9th Cir.1999) ................................................................................ 17

*United States v. Corinthian Colls.*
   655 F.3d 984 (9th Cir. 2011) ................................................................................ 19

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ................................................................................ 7

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

iii

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 1

Cal. Civ. Code. § 1636.......................................................................................................... 7

Cal. Gov. Code § 12651........................................................................................................ 1

Cal. Gov. Code § 12655 (c) ................................................................................................. 5

F.R.C.P. 8(a) ......................................................................................................................... 6

F.R.C.P. 9(b) ...................................................................................................... 6, 7, 17, 18

F.R.C.P. 12(b)(6) .................................................................................................................. 6

F.R.C.P. 15(a)(2)................................................................................................................ 20

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

iv

## I.     **INTRODUCTION**

Plaintiff City of Los Angeles (the "City") entered into contracts with Defendant Sprint Solutions, Inc. and Nextel of California (collectively, "Sprint") for wireless airtime, data and equipment.  (ECF No. 1 (Consolidated Complaint in Intervention ("Complaint") ¶ 1).)  As part of these contracts, Sprint agreed to provide the City with rate plan optimization on a quarterly or routine basis.  (*Id.* ¶ 4.)  Optimization is process through which Sprint was to identify the one rate plan among those offered for each wireless customer that would result in the lowest cost to the City.  (*Id.*)  Sprint also agreed to provide the City with wireless services at the "lowest cost available."  (*Id.*)  Taken together, these provisions required Sprint to provide the City with rate plan optimization reports that would permit it to purchase wireless services at the lowest cost available.  Sprint flouted these provisions, resulting in millions of dollars in overcharges to the City.  (*Id.* ¶¶5-7.)  To recover these losses, the City brought this action for violation of the California False Claims Act ("CFCA") (Cal. Gov. Code § 12651), violation of the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), breach of contract, and unjust enrichment.

Sprint's motion to dismiss the Complaint should be denied.  Contrary to Sprint's assertions, the contracts at issue required Sprint to provide the City with optimization reports on a quarterly or routine basis.  Moreover, Sprint's statements relating to the provision of optimization and optimization reports can be proven objectively false, and thus the City has stated a claim under the CFCA.  Sprint's half-hearted contentions regarding the specificity of the Complaint largely ignore the Complaint's detailed allegations concerning the manner in which Sprint perpetrated its fraudulent scheme, and are based on inapposite case law.  Finally, the motion to dismiss the City's claim for unjust enrichment should be denied because it is permissible for the City to plead that claim in the alternative.

## II.     **BACKGROUND**

From 2006 to the present, the City purchased wireless services from Sprint under three cooperative purchasing agreements.  (Compl. ¶¶ 3, 44.)  Cooperative purchasing agreements allow multiple government customers to purchase under the same contract terms and conditions.  (*Id.* ¶

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**          1

13.)  The contracts at issue included a number of specialized provisions designed to reduce costs. (*Id.* ¶ 4.)  Two specific cost saving provisions are relevant to this case.  First, the contracts required Sprint to provide rate plan optimization, a process for selecting the most effective means of reducing costs.  (*Ibid.*)  Rate plan optimization has a clear and widely accepted meaning in the wireless industry, and Sprint regularly provides this service to its large commercial customers.  (*Id.* ¶ 6.)  It can save a customer from 20 to 30 percent on the cost of wireless services.  (*Id.* ¶¶ 1, 108.) The optimization provisions in the contracts required Sprint to identify the one rate plan among the many offered for each wireless customer that would result in the lowest cost to the City.  (*Id.* ¶ 4.) Second, the contracts required Sprint to provide service at the "lowest cost available."  (*Id.*)  These two provisions reinforce each other, and they also place an independent duty on Sprint to both offer optimization and the lowest cost available.

There are three cooperative purchasing agreements containing similar, but not identical, terms which are at issue in this case.  The first was negotiated by the State of California (the "State") and is referred to as the State of California Wireless Contract ("CWC").  (Compl. ¶3.) The CWC incorporated the State's electronic "Request for Proposals," referred to as "eRFP 5014," along with Sprint's responses thereto.  (Compl. ¶¶ 27, 40.)  The eRFP required Sprint to "work with the State to furnish quality wireless equipment and services at the lowest cost available." (Compl. ¶ 36.)  It also required Sprint to provide various reports, including a "quarterly optimization report" for each wireless subscriber."  (Compl. ¶ 30, Sprint's Request for Judicial Notice ("Def.'s RJN") Ex. 2 at pp. 83-84 (§ 5.11.2).)   While the reporting requirements in the CWC applied only to "State Departments" (Def.'s RJN Ex. 2 at p. 83 (§ 5.11)), the CWC did not preclude political subdivisions like the City from contracting for such reports themselves.

The City did just that.  On October 27, 2006, the City and Sprint entered into Contract Number 58644 ("City Contract I"), whereby Sprint agreed to "furnish and provide Wireless Telephone, Accessories and Airtime Services in accordance with" the CWC.  (Compl. ¶ 44, Def.'s RJN Ex. 1 at p. 2.)  City Contract I made one material change to the CWC, it required Sprint to provide rate plan optimization directly to the City.  Specifically the contract stated:

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

2

Optimization:   After the initial plan assignment, Nextel/Sprint will routinely identify those users who are not in the most optimized plan and work with the City Department Telephone Coordinators to place users in the most optimized plan.

(Compl. ¶ 45; Def.'s RJN Ex 1 at p. 2.)  This provision required Sprint to provide rate plan optimization routinely — not sporadically and not only upon request — to City customers.

The other two cooperative purchasing agreements at issue were negotiated by the State of Nevada and referred to as the Western States Contracting Alliance ("WSCA") contracts — the first was in effect from 2006 to 2012 ("WSCA I") and the second went into effect in 2012 ("WSCA II.").  (Compl. ¶ 48.)  The WSCA I and WSCA II requests for proposals ("RFPs") and resulting contracts required Sprint to provide a "quarterly optimization report for each wireless service subscriber."  (*Id.* ¶¶ 60, 71; Def.'s RJN Ex. 4 at p. 19 of 125 (§ 3.2.2); Def.'s RJN Ex. 7 at p. 23 of 64 (§ 3.3.2.2)).  The contracts also required Sprint to provide quality wireless equipment and services at the lowest cost available.  (Compl. ¶¶ 59, 70; Def.'s RJN Ex. 4 at p. 18 of 125 (§ 3.1.1); Def.'s RJN Ex. 7 at p. 21 of 64 (§ 3.1.2).)  Sprint certified that it read and understood the RFPs and that it agreed to comply with these requirements.  (Compl. ¶¶ 63, 69, 78.)  Sprint did not attempt to modify these requirements.  (*Id.* ¶¶ 76, 78.)

California executed Participating Addenda, which allowed state agencies and political subdivisions, including the City, to contract with Sprint and other carriers under the same terms and conditions that WSCA I and WSCA II guaranteed.  (Compl. ¶¶ 80-82, 90.)  In 2010, the State decided to use the WSCA regime exclusively for California agencies and not to renew the CWC.  (Compl. ¶ 84.)  The State issued a "Request for Offer" ("RFO") to various wireless carriers, including Sprint, so that California-specific terms could be negotiated for inclusion in the Participating Addenda.  (*Id.*)  The RFOs required carriers to provide "a quarterly optimization report for each wireless service subscriber."  (*Id.* ¶ 86, City of Los Angeles's Request for Judicial Notice in Support of Opposition to Sprint's Motion to Dismiss ("Pl.'s RJN") Ex 1 § at pp. 23-24 (§7.16.2).)

Effective July 1, 2011,  the City and Sprint entered into an agreement ("City Contract II") expressly adopting the terms of the WSCA I contract, including the requirement that Sprint provide quarterly optimization reports.  (Compl. ¶ 95, Def.'s RJN Ex. 5.)  Specifically, City

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES

3

Contract II states:  "This Contract is awarded as a Cooperative Purchase Arrangement, in accordance with . . . the prices, terms and conditions stated in in a Contract between the State of Nevada on behalf of the Western States Contracting Alliance (WSCA) and Sprint Solutions, Inc. identified as RFP/Contract No. 1523 [WSCA I]."  (Def.'s RJN Ex. 5 at p. 1.)

City Contract II remained in effect until February 1, 2013, when it was replaced by Contract Number 59510 between Sprint and the City ("City Contract III"), which adopted the prices, terms and conditions of the WSCA II Contract.  (Compl. ¶ 95; Def.'s RJN Ex. 6 at p. 1.) City Contract III included a provision that Sprint would "routinely identify those users that are not in the most optimized plan" and work to reassign them to "the most optimized plan," but specified for the first time that such reports would be provided "upon written request of the City (but in no event more than once per quarter)."  (Compl. ¶ 95, Def.'s RJN Ex. 6 at p. 3.)

Sprint failed to give the City the benefit of the bargain, as it failed to provide the required quarterly optimization reports, even upon request of the City.  (Compl. ¶¶ 97-98.)  Instead, Sprint produced infrequent reports related to rate plan selections, which did not provide the same information found in a true optimization report.  (*Id.* ¶¶ 100–101, 103-104, 107, 120-121.)  Sprint passed off some of these reports as optimization reports, misrepresenting their value to the City. (*Id.* ¶ 120.)  For example, Sprint touted a number of reporting tools, including "SmartCD," "WirelessMGR," and "Sprint PCS eBilling and analysis."  (*Id.*)  While these tools provided access to raw data, they did not incorporate the software needed to identify the most cost-effective rate plan among all those available.  (*Id.*)

Throughout this whole process, Sprint acted knowingly.  (Compl. ¶¶ 132-135.)  Sprint made false and materially misleading representations to secure the contracts. (*Id.*)  Sprint misrepresented that it would provide rate plan optimization, knowing full well what it requires. (*Id.*)  It then failed to take any necessary action to fulfill their commitments. (*Id.*)

This case was filed by *Qui Tam* Plaintiff Richard Knudsen in Los Angeles County Superior Court in September 2013.  (ECF No. 1-1.)  Along with this case, Knudsen filed two additional cases against AT&T and Verizon.  The three cases were consolidated together in Los Angeles County Superior Court and the City filed a consolidated complaint in intervention in September

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES

4

2016 against all three defendants.  The City asserts causes of action for violation of the CFCA, unfair business practices in violation of the UCL, breach of written contract, and unjust enrichment.  (Compl. ¶¶ 142-166.)   Each Defendant removed the cases to the United States District Court for the Central District of California.  (ECF No.1.)  On the City's motion, the case was transferred to this Court.  (ECF No. 61.)  Sprint filed its motion to dismiss on June 30, 2016. (ECF No. 82.)

Sprint, as well, as AT&T and Verizon, have also been named as defendants in a similar action now pending in Sacramento Superior Court, *State of California ex rel. OnTheGo Wireless, LLC v. Cellco Partnership, et al.*, Case No. 34-2012-00127517 ("*OnTheGo*").  The Plaintiffs in *OnTheGo* include over 40 political subdivisions and the Regents of the University of California. As in this case, the *OnTheGo* plaintiffs have asserted claims for violation of the CFCA, unfair business practices, and breach of contract based on agreements adopting the terms of the CWC, WSCA I, and WSCA II agreements.  (Pl.'s RJN Ex. 2 ¶¶ 166-190.)  The superior court overruled Sprint's demurrer to the *OnTheGo* Plaintiff's Second Amended Complaint, which raised many of the same arguments Sprint has made here.  (Pl.'s RJN Ex. 3.)

## III.   LEGAL STANDARD

### A.   The False Claims Act is Construed Broadly

The proper judicial interpretation of the CFCA is embodied in the statutory scheme itself. The CFCA must be "liberally construed and applied to promote the public interest."  Cal. Gov. Code § 12655, subd. (c).  "[I]nasmuch as the False Claims Act obviously [is] designed to prevent fraud on the public treasury, it plainly should be given the broadest possible construction consistent with that purpose."  *City of Pomona v. Superior Court*, 89 Cal.App.4th 793, 801–802 (2001) (internal quotations omitted, emphasis added).  The CFCA " 'must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides.' " *Id.* (emphasis added).  The statute is " 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.' "  *Id.* at p. 802 (emphasis added).  Given the "very close similarity" of the CFCA to the Federal False Claims Act (FCA), courts turn to federal cases for guidance in interpreting the CFCA.  *Id.*  The FCA "reaches beyond 'claims' which might

be legally enforced, to <u>all fraudulent attempts</u> to cause the Government to pay out sums of money." *U.S. v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) (emphasis added).

### B.      Rules 8(a) and 12(b)

"[Federal Rule of Civil Procedure] Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Peel v. Brooksamerica Mortgage Corp.*, 788 F. Supp. 2d 1149, 1157 (C.D. Cal. 2011). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or allege sufficient facts to "raise a right to relief above the speculative level," *id.* at 555. The Court must accept as true all allegations of material facts alleged in the complaint, and must draw all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F. 3d 1382, 1384 (9th Cir. 1994).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 672, 678 (2009) (quoting *Twombly*). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).

### C.      Rule 9(b)

Rule 9 on its face does not apply to the *scienter* requirement of the false claims act. *See* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"); *see also In re GlenFed Inc. Securities Litigation*, 42 F.3d 1541, 1547 (9th Cir. 1994) (*en banc*) ("We conclude that plaintiffs may aver *scienter* generally, just as the rule states — that is, simply by saying that *scienter* existed"). With respect to FCA complaints, in *Ebeid v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010), the Ninth Circuit rejected a stringent pleading standard under Rule 9(b) and stated:

> We **do not** embrace the district court's categorical approach that would, as a matter of course, require a plaintiff to identify representative examples of false claims to support every allegation . . . . **[I]t is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."** [Citation].

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES

6

*Ebeid*, 616 F.3d at 998-99 (emphasis added).  Moreover, "the requirements of Rule 9(b) relax 'as to matters peculiarly within the opposing party's knowledge.' "  *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).  Rule 9(b) merely "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2006).

## IV.   ARGUMENT

### A.   The City Was Entitled to Quarterly Optimization Reports

Sprint does not appear to dispute it was required to provide the City with rate plan optimization under the relevant contracts.  Nor does Sprint dispute that optimization involves providing reports to its customers or that Sprint was required provide services and equipment at the "lowest cost available."  Sprint nevertheless contends that some aspects of one or more of the City's claims should be dismissed because Sprint was not contractually obligated to provide "quarterly optimization reports."   (Sprint's Memorandum of Points and Authorities in Support of Motion to Dismiss ("MPA") at 5.)  Sprint's interpretation is contrary to the plain meaning of the contractual language.

#### 1.   Principles of Contract Interpretation

Under California law, a contract must be interpreted so as to "give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636.  The parties' intent "is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).  "In determining this intent, [t]he rules governing policy interpretation require [the court] to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.  [The court] consider[s] the clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage.  [The court] must also interpret the language in context, with regard to its intended function in the policy." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277, 288 (2014).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**                    7

A breach of contract claim should only be dismissed where "the agreement is not susceptible to **any** interpretation that could support plaintiffs' theories of liability." *Gaines v. Home Loan Ctr., Inc*., No. SACV08667AHSRNBX, 2010 WL 11506442, at *7 (C.D. Cal. May 24, 2010) (emphasis added).  " 'So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, [the court] must accept as correct plaintiff's allegations as to the meaning of the agreement.' " *Concept Chaser Co. v. Hoyu Am. Co.*, No. CV0807702ODWPLAX, 2009 WL 10673192, at *3 (C.D. Cal. Apr. 3, 2009) (quoting *Aragon-Hass v. Family Sec. Ins. Servs., Inc.*, 231 Cal. App. 3d 232, 239 (Ct. App. 1991)).

## 2.     City Contract I Requires Sprint to Routinely Provide Optimization and Optimization Reports

As part of City Contract I, Sprint agreed to "routinely identify those users who are not in the most optimized plan and work with the City . . . to place users in the most optimized plan." (Def.'s RJN Ex. 1 at p. 2.)  This necessarily required Sprint to provide the City with routine optimization reports which identified those users who were not in the most optimized plans.  Sprint nevertheless contends that the City was not entitled to optimization reports under City Contract I. (MPA at 6-7.)  Sprint's contention cannot be squared with City Contract I's plain language.  It is also entirely inconsistent with Sprint's arguments on City Contract III, which are premised on the notion that providing optimization is tantamount to providing optimization reports.  (MPA at 8-9.)

City Contract I was awarded as a cooperative purchasing agreement in accordance with the CWC.  (Def.'s RJN Ex. 1 at 1.)  The City concedes that the CWC itself does not expressly require Sprint to provide quarterly optimization reports, because the CWC's mandatory requirement that wireless carriers provide quarterly optimization reports applies to "State departments and not to local agencies." (Def.'s RJN Ex. 2 at pp. 83-84 (§§ 5.11, 5.11.1).)  However, nothing in the CWC precluded the City from contracting for optimization or optimization reports.  The City did so, executing an agreement with Sprint which required the carrier to "routinely identify those users that are not in the most optimized plan and work with the City Department Telephone Coordinators to place users in the most optimized plan." (Def.'s RJN Ex. 1 at 2.)

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**                    8

As explained in the Complaint, optimization reports are an integral part of optimization. Optimization is the process for selecting the most cost-effective plan for a wireless device. (Compl. ¶ 20.)  Identifying the most cost-effect plan is technical, and requires detailed and historical usage data, a complete list of all available rate plans, and a means to match up the usage with the optimal plan.  (*Id.* ¶ 21.)  "The value of rate plan optimization is in the analysis of [the] usage data and potential plan matchups."  (*Id.* ¶ 101.)  Optimization reports are the primary means of providing this analysis.  (*Id.* ¶¶ 97-107.)  Thus, in the absence of routine optimization reports, there was no way for Sprint to fulfill its contractual obligation to "routinely identify" users who were not in the most optimized plan and place those users in the most optimized plan.[1]

Sprint concedes as much in its arguments on City Contract III.  That contract provides that Sprint "will, upon written request of the City (but in no event more than once per quarter), routinely identify those users that are not in the most optimized plan and work with the City . . . to place users in the most optimized plan."  (Def.'s RJN Ex. 6 at p. 3.)  While this language, like the similar language in City Contract I, does not expressly reference optimization reports, Sprint contends that it governs its obligation to provide such reports.  (MPA at 8.)

In sum, City Contract I requires Sprint to routinely provide optimization reports.  This is borne out by the language of the contract, the established methods for providing optimization, and Sprint's own arguments regarding similar contractual language.

### 3. City Contract II Required Sprint to Provide Quarterly Optimization Reports

City Contract II was awarded as a cooperative purchase agreement "in accordance with" WSCA I.  The WSCA I agreement expressly required Sprint to provide a "quarterly optimization report for each wireless service subscriber."  (Def.'s RJN Ex. 4 at p. 19 of 125 (§ 3.2.2.2).)   Sprint now argues that WSCA I's optimization-reporting provision did not extend to the City, but only to the "lead state" of Nevada.  (MPA at 7.)  The Sacramento Superior Court rejected the same argument when it overruled Sprint's demurrer in *OnTheGo*.  (Pl.'s RJN Ex. 3 at pp. 14-15.)  This

---

[1] At the very least, Sprint's argument cannot be resolved on a motion to dismiss as it requires consideration of matters outside the pleadings, including the relationship between optimization and optimization reports.

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

Court should do the same.  The plain language of WSCA I and its purpose and structure support the City's reading.  Moreover, Sprint's contrary interpretation of WSCA is entirely unreasonable and is based on incomplete and misleading extrinsic evidence.

             **a.**        **The Plain Language of the Optimization Term Confirms the City's Reading**

The text of the WSCA I optimization provision supports the City's entitlement to optimization reports.  The WSCA I RFP required Sprint to provide a "quarterly optimization report for each wireless service subscriber." (*Id.* ¶¶ 60, 71; Def.'s RJN Ex. 4 at p. 19 of 125 (§ 3.2.2.2).)

On its face, this language requires Sprint to provide political subdivisions, including the City, with optimization reports.  Further, the WSCA RFP broadly defines "subscriber" without regard to whether the customer is a state or political subdivision:  A "subscriber" is simply a "using entity who contracts to receive and pay for wireless or walkie-talkie services." (*See* Def.'s. RJN Ex. 4 at p. 17 of 125.)  Because the City purchased services under WSCA I (Compl. ¶ 95), it was a "subscriber" to whom Sprint owed quarterly optimization reports.

Moreover, the responses Sprint submitted to the WSCA RFPs demonstrate that it understood the optimization reporting obligation extended to all purchasers, not just Nevada.  Specifically, Sprint represented that "Sprint's Contract Compliance Team will work with WSCA participating States or entities to develop report templates based on their specific requirements." (Compl. ¶ 120.)  Sprint did not do so for the City.

             **b.**        **The City's View Is Consistent with the Purpose of Cooperative Purchasing Agreements and WSCA I's Structure**

The City's interpretation is consistent with the optimization provision's purpose in the context of cooperative purchasing agreements like WSCA I and II.  Cooperative purchasing agreements pool "the collective market power [of] government entities" and offer vendors "instant access to the large and lucrative government market."  (Compl. ¶ 17.)  Such agreements "provide[] benefits with respect to the procurement of products and services that require technical expertise.  Having a single entity develop the contract saves time and money, including the effort required to learn about complicated services and develop specialized terms." (*Id.* ¶ 16.)  Nevada negotiated master contracts that required Sprint to provide government purchasers quarterly optimization

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

10

1   reports.  (*Id.* ¶ 48.)  Optimization is a common industry practice that saves from 20 to 30 percent

2   on the cost of wireless services by ensuring that each wireless line is subscribed to the most cost-

3   efficient rate plan available.  (*Id.* ¶¶ 1, 108.)  It stands to reason that a cooperative purchasing

4   agreement that includes such a major cost saving provision would extend that benefit to the

5   hundreds (potentially thousands) of government entities that purchase services under it.

6          Bolstering this view, WSCA I expressly confers on political subdivisions the same rights

7   that Nevada and other purchasers enjoy.  The Standard Terms and Conditions in the WSCA I

8   RFP, for example, require carriers "to supply the political subdivisions based upon the same

9   terms, conditions and prices" as other purchasers under the agreement.  (*See* Def.'s RJN Ex. 4 at p.

10  61 or 125 ("Political Subdivision Participation").)  Several of the terms of WSCA I are expressly

11  unique to Nevada, such as a requirement that carriers "[n]otify the lead State in writing of any

12  unresolved issues or problems that have been outstanding for more than one billing cycle."  (*Id.* at

13  p. 25 of 125 (§ 3.9.3).)  But the optimization provisions are not one of these terms, as they do not

14  mention the "lead State."

15         The terms of California's Participating Addenda also confirm that the right to quarterly

16  optimization reports extends to political subdivisions.  The purpose of a participating addendum is

17  to afford "each party" using the WSCA contracts "the protection of [the contracts'] terms and

18  conditions."  (Compl. ¶ 80.)  California's Participating Addenda, which covered political

19  subdivisions, incorporated the terms of the WSCA I; it did not amend Sprint's obligations to

20  provide quarterly optimization reports to exclude political subdivisions.[2]  (*Id.* ¶ 83.)

21         These contractual provisions complement one another:  Terms that put political

22  subdivisions on equal footing with all other purchasers reinforce the RFPs' provision that requires

23  ───────────────────

24         [2] The Request for Offer ("RFO") California issued in November 2010 in connection with
    WSCA I and the related Participating Addenda did not alter Sprint's obligation to provide
    optimization reports to political subdivisions. (Compl. ¶¶ 85-86.)  The RFO elaborates California

25  specific terms governing the contractual relationship between Sprint, on the one hand, and
    California and its agencies, on the other.  (*Id.*)  With respect to optimization, the RFO requires

26  Sprint to "provide a quarterly optimization report for each wireless service subscriber," and "to
    submit this report to the State's Contract Administrator and may[]be to the ATRs."  (*Id.* ¶ 86; s*ee*

27  *also* Pl.'s RJN Ex. 1 at pp. 23-24 (§ 7.16.2).)  The RFO supplements WSCA I's requirement that
    Sprint must provide quarterly optimization reports to political subdivisions; it does not revoke or

28  abrogate that existing obligation.

LAW OFFICES
Cotchett, Pitre &
McCarthy, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES                    11

1    Sprint to provide quarterly optimization reports "for each . . . subscriber."  All told, these

2    provisions support the City's analysis that the optimization reporting requirement includes political

3    subdivisions.

4                    **c.       Sprint's Contrary Interpretation Is Unreasonable**

5          To defeat a motion to dismiss concerning disputed contractual terms, the City must show

6    only that its interpretation of the contract is reasonable.  *See Feller v. Transamerica Life Ins. Co.*,

7    No. 216CV01378CASAJWX, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016) (" '[w]hen

8    reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must

9    determine whether the alleged agreement is "reasonably susceptible" to the meaning ascribed to it

10   in the complaint' ").  The City has done so.  Although it is not the City's legal burden to establish

11   that Sprint's contract construction is in error, the City is nonetheless compelled to explain why it

12   cannot stand.

13         Sprint contends that the optimization reporting requirement is limited to Nevada alone

14   based on a single item of evidence proffered as part of Sprint's RJN.  Sprint contends that Nevada

15   gave an answer to a question posed during the RFP process (the "Q&A") that amended WSCA I to

16   deprive government customers other than Nevada of the cost savings optimization yields.  (MPA at

17   7, citing Def.'s RJN Ex. 4.)

18         The Q&A did nothing of the sort.  Moreover, the evidence that Sprint cites is incomplete,

19   as it omits the most significant portion of the response, "Attachment F."

20         The Q&A at issue, which refers to Section 3.2.2.2 in the WSCA I RFP, consists of the

21   following exchange:

22         [Question 48:] Please explain what level of detail is required for the reports
           referenced in Section 3.2.2.2. Also, should these reports be submitted to the Lead
23         State and/or all the participating WSCA states.

24         [Answer:] Please refer to Attachment F—Quarterly Reports. Reports should be
           submitted to the Lead State [Nevada].

25

26   (Def.'s. RJN Ex. 4 at p. 10 of 125.)

27         Sprint cannot escape the fact that the question does not focus on, let alone mention,

28   optimization reports.  Instead, it refers to the entirety of Section 3.2.2.2, which describes four

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**                      12

separate reports (Def.'s RJN Ex 4 at p. 19 of 125), without pinpointing which one the question concerns.  Moreover, the attachment referenced in the "answer" is critically important as it is a sample quarterly "Administrative Report."  *(See* Def.'s RJN Ex. 4 at pp. 123-125 of 125.)  The reference in the answer to a Quarterly Administrative Report definitely establishes that the Q&A has nothing to do with optimization reports.

In exchange for negotiating and administering the WSCA agreements for the benefit of hundreds of government entities and wireless carriers, the WSCA RFP provided that Sprint and other carriers would pay Nevada a quarterly "Administration Fee" equal to 0.0010 percent of the revenue they received from customers utilizing the WSCA contract.  (*See* Def.'s RJN Ex. 4 at pp. 3-4 of 125 (Questions 6 & 10).)  Carriers were required to provide quarterly reports setting out the revenue they received and calculating the fee they owed.  (*See id.* at pp. 18-19 of 125 (§ 3.2.1.3).)  Attachment F is the form used to report the administrative fee Sprint owed containing cells for "Gross Total Sales," the "WSCA Admin Fee Rate" of 0.0010 percent, and a total "WSCA Admin Fee."  In short, Sprint could only use Attachment F to report "[u]sage and purchases under the contract," the first of the four reports described in Section 3.2.2.2.  On its face, it could not be used for any other report referenced there, including optimization reports.[3]

Moreover, Sprint's interpretation of the contracts does not make sense, as it is premised on the idea that Nevada was to receive reports concerning City employees.  As discussed, optimization reports are a key aspect of the optimization services promised by Sprint, since they provide information about City employees that are not in cost effective plans.  While these reports are of great use to the City, it is unclear why Nevada would need or want them, or what it could possibly do with information concerning subscribers with which it has no connection.

### 4.    City Contract III Required Sprint to Provide the City with Optimization Reports Upon Request

Sprint asserts that the City Contract III did not require it to provide optimization reports, even if they were requested by the City.  But the plain language of contract required Sprint to

---

[3] Moreover, Sprint has offered no indication that in fact provided optimization reports to Nevada.  Thus, even if Sprint's interpretation of the contract is correct — it is not — Sprint still breached the terms of the agreement.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES

13

1    provide optimization reports upon request.  (Def.'s RJN Ex. 6 at p. 3.)  As alleged in the

2    Complaint, Sprint failed to do so.  (Compl. ¶ 98.)

3        City Contract III was awarded in accordance with the WSCA II agreement.  Like WSCA I,

4    WSCA II required Sprint to provide a "quarterly optimization report for each wireless service

5    subscriber."  (Compl. ¶ 71; Def.'s RJN Ex. 7 at p. 23 of 64 (§ 3.3.2.2).)  Sprint briefly argues

6    WSCA II only required Sprint to provide these reports to Nevada and not to the City.  (MPA at 9.)

7    However, Sprint does not point to any contractual language which would support its position.  In

8    any event, the argument fails for the reasons set forth in Section IV.A.3, *supra*.

9        While WSCA II mandated quarterly optimization reports, City Contract III specified that

10   those reports would only be required upon written request of the City.  Specifically, City Contract

11   III stated:  "Sprint Solutions will, upon written request of the City (but in no event more than once

12   per quarter), routinely identify those users that are not in the most optimized plan and work with

13   the City . . . to place users in the most optimized plan."  (Def.'s RJN Ex. 6 at p. 3.)

14       Sprint argues that this language trumped any contrary requirement in WSCA II requiring

15   the provision of <u>quarterly</u> optimization reports, and thus Sprint was only required to act upon the

16   City's request.  At the same time, since City Contract III does not expressly mention optimization

17   reports, Sprint appears to argue that it was not required to provide any reports at all, even upon

18   request of the City.  But Sprint cannot have it both ways.  Either the optimization provisions of

19   City Contract III governed Sprint's reporting duties — in which case optimization reports were

20   required upon request by the City — or they don't — in which case City Contract III does not alter

21   WSCA II's requirement that Sprint provide optimization reports on a quarterly basis.

22       Sprint further argues that dismissal is warranted because the City has not pleaded that it

23   requested optimization or optimization reports.  (MPA at 8.)  Not so.  The City specifically alleged

24   that Sprint "sporadically prepared reports related to rate plan selections, *often in response to*

25   *requests from City departments or representatives*," but those reports did not contain the

26   information required by the relevant contracts.  (Compl. ¶ 98.)

27

28

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

14

### B.    Sprint's Claims Were Objectively False

The Court should also reject Sprint's contention that the City's CFCA claims should be dismissed because the relevant contractual terms are too ambiguous to support a finding of falsity. (*See* MPA at 9-11.)  It is true that allegations of violations of "vague," "imprecise," or "subjective" contractual terms generally do not give rise to objective falsehoods and thus cannot serve as the basis for liability under the CFCA.  S*ee U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.* 525 F.3d 370, 376–377 (4th Cir.2008).  However, the false statements alleged here are objectively false, and the contractual terms that were violated are in no way vague, imprecise, or subjective.

As an initial matter, the City alleges more than a breach of contract claim.  The allegations of the Complaint show that Sprint submitted false claims by:  (1) certifying in each claim for payment that it was in compliance with provisions concerning optimization, optimization reporting, and providing services at the lowest cost available, when Sprint knew it was not in fact in compliance; and (2) fraudulently inducing the City to enter into the relevant agreements by representing that it could provide optimization services and services at the lowest cost available when it had no intention or ability to do so.  (Compl. ¶¶ 110, 135-136, 144, 149.)

Sprint's arguments have no bearing on the City's fraudulent inducement theory of liability.  "This theory, rather than specifically requiring a false statement of compliance with government regulations [or contractual provisions], is somewhat broader.  It holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006); *see also United States ex rel. Campie v. Gilead Sciences*, 2017 U.S. App. LEXIS 12163, at *28 (9th Cir. July 7, 2017) (relator adequately alleged promissory fraud under the FCA where defendant fraudulently obtained FDA approval of drug, and thus each claim was fraudulent even if false representations were not made in the claims for reimbursement themselves).  As alleged in the Complaint, Sprint had no intention of complying with the optimization provisions contracts when it agreed to them.  (Compl. ¶¶ 110, 120-121.)

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**                    15

Sprint's arguments also have no bearing on the City's "low cost" allegations, as Sprint does not dispute that the contracts' "lowest cost available" provisions are sufficiently precise to support an FCA claim.

Moreover, contrary to Sprint's contentions, its certifications regarding optimization are objectively false.  The contracts' requirement that Sprint provide optimization reports on a quarterly or routine basis is not vague, and Sprint's compliance with this term can be objectively assessed — Sprint either provided the required reports or it didn't.  Moreover, as shown in Section IV.A *supra*, there is only one reasonable interpretation of the contracts reporting provisions.  For example, the WSCA I agreement, the terms of which are incorporated into City Contract II, expressly requires Sprint to provide a "quarterly optimization report for each wireless service subscriber."  (Def.'s RJN Ex. 4 at p. 19 of 125 (§ 3.2.2).)  To the extent there is any ambiguity in the plain language of City Contract II or any of the other relevant contracts — there is not — the Court may consider extrinsic evidence to determine the parties' intent.  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006).  It is premature at this stage to consider such extrinsic evidence, let alone determine whether it gives rise to a disputed legal issue.

Likewise, the contracts' requirement that Sprint provide optimization is also sufficiently concrete to support a finding of objective falsity.  Sprint argues that the provisions in City Contracts I and III requiring Sprint to "routinely identify those users who are not in the most optimized plan" and "work with the City . . . to place those users in the most optimized plan" are too imprecise to support an FCA claim.  (MPA at 11.)  Specifically, Sprint takes aim at the terms "routinely identify," "work with," or "most optimized."  (*Id.*)  But Sprint cannot plausibly contend that it "routinely identif[ied]" users who were not in the most optimized plan if it only did so sporadically or if it never did so at all.  Nor can Sprint contend that it "work[ed] with the City" if it made no attempt to reach out to the City to provide optimization.  And while term "optimize" may not have been defined in the contracts, as alleged in the complaint, it has a clear and widely accepted meaning in the wireless industry.  (Compl. ¶ 6.)  Thus, determining whether Sprint provided optimization is an objective inquiry.

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**

Sprint argues that differences of interpretation cannot give rise to liability, and that an ambiguous contract can never give rise to a false claims action.  However, whether the contract interpretation Sprint now proffers is reasonable does not resolve whether it knowingly submitted false claims.  That a defendant in litigation can come up with an alternative interpretation of a contract or regulation does not preclude a finding that a false claim was knowingly or recklessly submitted, because to do so ignores a defendant's intent.  If Sprint's argument were correct, it "could submit a claim, knowing it was false, or at least with reckless disregard of its falsity, thus meeting the intent element, but nevertheless avoid liability by successfully arguing that its claim reflected a 'reasonable interpretation' of the requirement and was therefore 'not false.' "  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 n.3 (9th Cir.1999).

Regardless, whether Sprint understood the contract in the way that the City alleges is not a matter for a motion to dismiss.  The Complaint alleges how Sprint understood the requirement, based on the specific words Sprint used and its actions in other contexts; those allegations must be taken as true.  If Sprint wishes to show it actually had a different understanding, it is free to do so at the appropriate time — following discovery.  *See U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (defendant's "comforting conclusion" that it could not have known it made a false statement because of its differing interpretation of the underlying contract "cannot be reached by mere inspection of [relator's] complaint"); *United States ex rel. Chilcott v. KBR, Inc.*, No. 09-4018, 2013 U.S. Dist. LEXIS 153331, at *22–23 (C.D. Ill. Oct. 24, 2013) (refusing to "make a final decision" as to either contractual interpretation or defendant's intent on a motion to dismiss because "[t]he Court's only role at this stage is to determine whether Plaintiff's allegations, taken as true, are sufficient to raise a claim under the FCA").

## C.   The City's Claims Are Pleaded with Sufficient Particularity

Sprint's contention that the complaint does not meet Rule 9(b)'s pleading standards may be easily dismissed.  The 166-paragraph Complaint specifically alleges Sprint's false statements, the particular individuals who made them, when they were made, as well as why they were false. (*See, e.g.*, Compl. ¶¶ 39, 41, 44, 63, 78, 90, 95, 98, 120-121, 127-129.)  Sprint entirely disregards these detailed factual allegations, as well as the requirement that the Court draw all inferences in

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES

17

1  the light most favorable to the plaintiff on a motion to dismiss.  *See Moyo*, 32 F. 3d at 1384.  Each

2  of Sprint's arguments is addressed below.

3  **First**, Sprint once again asserts that the City cannot base its claims on Sprint's failure to

4  provide quarterly optimization reports because, according to Sprint, it was not required to provide

5  such reports.  (MPA at 11-12.)  This argument fails for the reasons set forth in Sections IV.A-B,

6  *supra*, and has no bearing on Rule 9(b)'s particularity requirement.

7  **Second**, Sprint contends the Complaint impermissibly lumps it together with the other two

8  defendants, Verizon and AT&T.  (MPA at 12.)  The argument rings hollow.  The City's allegations

9  concerning Sprint's misconduct are straightforward:  Sprint failed to comply with its express

10  contractual obligations by failing to provide optimization while falsely represented that it had in

11  fact done so.  There is no ambiguity about Sprint's role in the fraud, as there is no allegation that it

12  acted in concert with anyone else.

13  The City also alleges that each the other two defendants engaged in an almost identical

14  scheme, but they did so independent of Sprint.  Sprint essentially argues that because the City

15  sometimes alleges that all three defendants acted in the same way, without singling out each

16  defendant by name, the Complaint lacks the requisite particularity.  However, the fact that the City

17  sometimes refers to Sprint, Verizon, and AT&T collectively when describing actions that all three

18  took in no way undermines the specificity of the pleading.  Amending the Complaint to add

19  identical allegations for each defendant might address Sprint's complaints, but it serves no

20  practical purpose other than to make the pleading longer.

21  In any event, the Complaint does differentiate between the defendants.  As an initial matter,

22  the Complaint describes the cooperative purchasing agreements executed by Sprint, the

23  agreements Sprint entered into directly with the City, the representations Sprint employees made

24  when Sprint entered into these agreements, and why these representations were false.  (Compl. ¶¶

25  31, 39-40, 44, 66, 74, 78, 90, 95.)  The Complaint also describes how Sprint in particular failed to

26  provide rate plan optimization.  (*Id.* ¶¶ 97-107.)  For example, the City alleges that Sprint touted a

27  number of specific "Account Management and Reporting Tools" which were incapable of

28  producing the required optimization reports.  (*Id.* ¶¶ 120-121.)  The City also alleges that Sprint, as

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES

18

1   well as Verizon, disseminated raw usage reports, but those reports did not comply with the

2   contractual requirement to prepare optimization reports.  (Compl. ¶ 103.)

3         Moreover, Sprint's authority on this point is inapposite as it relates to circumstances where

4   a plaintiff alleges that multiple officers or employees of a corporation participated or conspired

5   together in a single fraudulent scheme, but the plaintiff fails to identify the role of each individual

6   defendant in that scheme.  (MPA at 12 (citing *United States v. Corinthian Colls.* 655 F.3d 984,

7   997-998 (9th Cir. 2011); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007)).)  In

8   contrast, here, the City alleges that each of the defendants perpetrated its own independent fraud by

9   failing to provide optimization.  (Compl. ¶¶ 1, 5, 6.)  Unlike *Swartz* and *Corinthian*, this is not a

10  case where several individuals are alleged to have worked or conspired together to commit fraud,

11  and thus there is no need to "identify the role of each defendant in the alleged fraudulent scheme."

12  *See Swartz*, 476 F.3d at 765 (internal quotations and citations omitted).

13        **Third**, Sprint takes out of context various allegations of the Complaint in a failed attempt

14  to show inconsistencies in the pleading.  (MPA at 13.)  For example, Sprint argues that the City's

15  allegation that Sprint was unwilling or unable to "routinely identify" users who were not in the

16  most optimal plan is inconsistent with its allegation that Sprint "sporadically" prepared reports

17  related to rate plan selections.  (MPA at 13.)  However, in the latter allegation, the City explains

18  that the reports in question were insufficient in both their "substance" and "frequency," and thus

19  did not satisfy Sprint's contractual obligation to provide optimization on a routine or quarterly

20  basis.  (Compl. ¶ 98.)  Sprint further argues that these deficient reports somehow establish that

21  Sprint satisfied its obligations under City Contracts I and III to "work with the City Department

22  Telephone Coordinators to place users in the most optimized plan."  (MPA at 13; Def.'s RJN Ex. 1

23  at 2.)  But as alleged in the Complaint, these reports were not the optimization reports required by

24  the contracts, and in any event, they did nothing to place City users in the most optimized plan.[4]

25  (Compl. ¶ 98.)

26        ───────────────
            [4] Sprint also takes issue with the City's allegation that Sprint's affirmative representations

27  that it would comply with the contracts' optimization requirements were false and misleading
    because Sprint was not prepared to analyze rate plan assignments for all City users quarterly or

28  routinely.  (MPA at 13 (citing Compl. ¶110).)  At the same time, Sprint acknowledges that the City
    specifically alleged that the reporting tools touted by Sprint were incapable of preparing the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

### D.    The City May Plead Unjust Enrichment in the Alternative

Finally, Sprint contends that the City's unjust enrichment claim should be dismissed because, according to Sprint, it is based entirely on a breach of contract.  (MPA at 14.)  It is true that a plaintiff may not proceed on an unjust enrichment claim where the subject of that claim is covered by the parties express agreements, and thus may not recover for both a breach of contract and unjust enrichment.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1389 (2002).  However, a plaintiff is free to plead both causes of action in the alternative.  *Id.*  ("a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement.").  That is precisely what the City did here.   While it remains the City's contention an enforceable agreement exists, if this Court were to determine otherwise, the City should still be able to recover under a claim of unjust enrichment.

## V.    CONCLUSION

For the foregoing reasons, Sprint's motion to dismiss should be denied.  Should the Court grant the motion to dismiss, the City should be granted leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *see also U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) ("Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.' ").

Respectfully submitted,

Dated: August 11, 2017          **COTCHETT, PITRE & McCARTHY LLP**

By:   */s/ Adam M. Shapiro*
        NIALL P. McCARTHY
        ERIC J. BUESCHER
        ADAM M. SHAPIRO

*Attorneys for Plaintiff City of Los Angeles*

---

required optimization reports.  Once again, Sprint is asking the Court to draw inferences against the City on a motion to dismiss.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFF CITY OF LOS ANGELES'S OPPOSITION TO DEFENDANTS SPRINT
SOLUTIONS, INC. AND NEXTEL OF CALIFORNIA, INC.'S MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT IN INTERVENTION OF CITY OF LOS ANGELES**                    20