1    Colin H. Murray (State Bar No. 159142)
        colin.murray@bakermckenzie.com
2    Anne M. Kelts (State Bar No. 298710)
        anne.kelts@bakermckenzie.com
3    **BAKER & McKENZIE LLP**
     Two Embarcadero Center, 11th Floor
4    San Francisco, CA  94111-3802
     Telephone:  +1 415 576 3000
5    Facsimile:  +1 415 576 3099

6    John E. Joiner (admitted *Pro Hac Vice*)
        jjoiner@wc.com
7    William P. Ashworth (admitted *Pro Hac Vice*)
        washworth@wc.com
8    **WILLIAMS & CONNOLLY LLP**
     725 Twelfth Street, N.W.
9    Washington, DC  20005
     Telephone:  +1 202 434 5000
10   Facsimile:  +1 202 434 5029

11   Attorneys for Defendants
     SPRINT SOLUTIONS, INC. and
12   NEXTEL OF CALIFORNIA, INC.

13                  UNITED STATES DISTRICT COURT

14                EASTERN DISTRICT OF CALIFORNIA

15                      SACRAMENTO DIVISION

16

17   CITY OF LOS ANGELES, *ex rel.* RICHARD       **Case No. 2:17-cv-00811-TLN-AC**
     KNUDSEN,
18                                                **Date Action Was Transferred from**
                    Plaintiffs,                   **Central District of California:**
19                                                **April 18, 2017**
             vs.
20                                                **DEFENDANTS SPRINT SOLUTIONS,**
     SPRINT SOLUTIONS, INC.; NEXTEL OF            **INC. AND NEXTEL OF CALIFORNIA,**
21   CALIFORNIA, INC., D/B/A NEXTEL               **INC.'S REPLY IN SUPPORT OF**
     COMMUNICATIONS AND SPRINT                    **MOTION TO DISMISS THE**
22   NEXTEL; and DOES 1-10,                       **CONSOLIDATED COMPLAINT IN**
                                                  **INTERVENTION OF CITY OF LOS**
23                                                **ANGELES**
                    Defendants.
24                                                **Date:       September 7, 2017**
                                                  **Time:       2:00 p.m.**
25                                                **Crtrm:      2, 15th Floor**
                                                  **            501 I Street, Sacramento CA**
26                                                **Judge:      Hon. Troy L. Nunley**
                                                  **Trial Date: None set**
27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

                                          Case No. 2:17-cv-00811-TLN-AC
                       SPRINT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I. THE CITY WAS NOT ENTITLED TO QUARTERLY OPTIMIZATION REPORTS. ................ 1

    A.    City Contract I ........................................................................................ 1

    B.    City Contract II ....................................................................................... 2

    C.    City Contract III ...................................................................................... 5

II. THE CITY FAILS TO DEMONSTRATE OBJECTIVE FALSITY ......................................... 6

III. THE CITY HAS NOT PLEADED ITS CLAIMS WITH PARTICULARITY ........................... 8

IV. THE CITY FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ............................. 9

V. LEAVE TO AMEND SHOULD NOT BE GRANTED. ...................................................... 9

CONCLUSION ............................................................................................................. 10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

i

Case No. 2:17-cv-00811-TLN-AC
SPRINT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page No(s).**

**Cases**

*Crosby v. HLC Props., Ltd.*,
   223 Cal. App. 4th 597 (2014) ..................................................................................3

*Gaines v. Home Loan Ctr., Inc.*,
   No. SA CV 08-667 AHS, 2010 WL 11506442 (C.D. Cal. May 24, 2010) ....................1

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ..................................................................................9

*Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*,
   190 F. Supp. 3d 976 (E.D. Cal. 2016)......................................................................9

*United States ex rel. Grupp v. DHL Express (USA), Inc.*,
   47 F. Supp. 3d 171 (W.D.N.Y. 2014), *aff'd*, 604 F. App'x 40 (2d Cir. 2015) .............7

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) ................................................................................9

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ..................................................................................9

*United States ex rel. Lindenthal v. Gen. Dynamics Corp.*,
   61 F.3d 1402 (9th Cir. 1995) ..................................................................................6

*Martinez v. Socoma Companies*,
   11 Cal. 3d 394 (1974) (en banc) .............................................................................1

*United States ex rel. Modglin v. DJO Glob. Inc.*,
   48 F. Supp. 3d 1362 (C.D. Cal. 2014) .....................................................................8

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ................................................................................2

*United States ex rel. Oliver v. Parsons Co.*,
   195 F.3d 457 (9th Cir. 1999) ..................................................................................7

*Speirs v. BlueFire Ethanol Fuels, Inc.*,
   243 Cal. App. 4th 969 (2015) ..................................................................................3

*Steven v. Fid. & Cas. Co.*,
   58 Cal. 2d 862 (1962) ............................................................................................2

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ..................................................................................7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ii

*United States ex rel. Yannacopoulos v. Gen. Dynamics Corp.*,
   652 F.3d 818 (7th Cir. 2011) ...........................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 8 .......................................................................................5

Federal Rule of Civil Procedure 9(b) ..............................................................................5, 10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

## INTRODUCTION

The City proposes in its Opposition a contract interpretation that cannot be reconciled with the plain language of the relevant agreements, and that cannot pass muster at this pleadings stage or any other.  That plain language nowhere requires—and cannot reasonably be read to require—Sprint to provide optimization reports (quarterly or otherwise) to the City.  Absent such an obligation, the City's claims necessarily fail.

The claims fail for other reasons as well:  The plain contract language does not lend itself to the "objective falsity" required to state a claim under the California False Claims Act ("CFCA"). The City does not differentiate between the Defendants in its allegations of contract violations and fraud, and has not satisfied its pleading burden by treating the Defendants as a monolith or leveling against them only collective and general allegations.  And the City's unjust enrichment claim cannot be predicated—even in the alternative, as the City contends—upon alleged breaches of written contracts.

## ARGUMENT

## I.   THE CITY WAS NOT ENTITLED TO QUARTERLY OPTIMIZATION REPORTS.

The City attempts to sow confusion regarding the actual obligations under its contracts with Sprint.  But a review of the agreements at issue makes clear that Sprint was not contractually obligated to provide quarterly "optimization reports" to the City.[1]

### A.   City Contract I

The City concedes that the California Wireless Contract ("CWC"), the group-purchasing contract incorporated by reference in City Contract I, did not require Sprint to provide it with quarterly optimization reports.  Opp. at 8.  The only remaining question is whether City Contract I's

---

[1] As a threshold matter, the City asserts that dismissal in a contract case is proper only when "'the agreement is not susceptible to **any** interpretation that could support plaintiffs' theories of liability.'" Opp. at 8 (emphasis added by the City) (quoting *Gaines v. Home Loan Ctr., Inc.*, No. SA CV 08-667 AHS (RNBx), 2010 WL 11506442, at *7 (C.D. Cal. May 24, 2010)).  But the California Supreme Court case upon which *Gaines* relies, *Martinez v. Socoma Companies*, made clear a contract claim will survive dismissal only if the plaintiff's interpretation is one to which the contract is "*reasonably* susceptible."  11 Cal. 3d 394, 400 (1974) (en banc) (emphasis added).  And *Gaines* dismissed breach-of-contract claims on a motion to dismiss because the "conduct alleged by Plaintiffs cannot be a breach" of the relevant agreements under their plain terms.  *See Gaines*, 2010 WL 11506442, at *7.

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 2:17-cv-00811-TLN-AC
SPRINT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

"Optimization" clause required Sprint to provide such reports to the City.  It plainly did not.

City Contract I's "Optimization" clause provided only that Sprint "routinely identify" users "not in the most optimized plan" and "work with" City Department Telephone Coordinators to "place users in the most optimized plan."  Compl. ¶ 45; Mot. at 2, 6–7.  The City argues that this language "necessarily required Sprint to provide the City with routine optimization reports," Opp. at 8, even though it does not mention reports of any kind.  The City simply asserts—without citation to any contract language or other source—that "optimization reports are an integral part of optimization" and that there was no way for Sprint to fulfill its contractual obligation without providing them.  Opp. at 9.  But this argument does not withstand scrutiny.  Sprint could satisfy this provision in many ways other than providing quarterly reports—for example, by routinely communicating or meeting with City officials to discuss and evaluate the City's rate plans (as discovery would show Sprint in fact did).  Moreover, the City ignores the fact that City Contract I contained a "Quarterly Reports" provision that outlined specific types of reports be provided to the City—none of which related to optimization.  *See* Sprint RJN Ex. 1 at 3; Mot. at 6–7.  To the extent there could be any doubt as to whether City Contract I required optimization reports, this provision removes it.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) ("The California Supreme Court has observed that 'the rule of construction *expressio unius est exclusio alterius*; i.e., that mention of one matter implies the exclusion of all others' is 'an aid to resolve the ambiguities of a contract.'" (italics added) (quoting *Steven v. Fid. & Cas. Co.*, 58 Cal. 2d 862, 871 (1962))).[2]

## B.  City Contract II

The City does not argue that the language of City Contract II required Sprint to provide the City with quarterly optimization reports.  Like City Contract I, City Contract II contained a "Quarterly Reports" provision, which did not require optimization reporting and did not include any reference to "optimization."  Sprint RJN Ex. 5 at 4.  And unlike its other contracts with Sprint, City Contract II contained no specific clause related to "optimization."  *See* Sprint RJN Ex. 5.

---

[2] The City claims that it should be allowed to proceed with discovery in order to prove that the "routinely identify" language required reporting.  Opp. at 9 n.1.  But no amount of discovery can alter the plain language of the contracts, which forecloses the City's interpretation.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

The City nevertheless claims that the optimization-reporting provision of the WSCA I contract, incorporated by reference in City Contract II, required Sprint to provide quarterly optimization reports. Opp. at 9–10. But as Sprint explained in its Motion, that provision did not extend to the City; it only applied to the "Lead State" of Nevada, as Nevada made clear in response to a specific question on the topic in Amendment #1 to the WSCA I RFP ("Question 48"). Mot. at 3, 7; Sprint RJN Ex. 4 at 9. The City cites the language in WSCA I's optimization-reporting provision that required the provision of a "quarterly optimization report *for* each wireless service subscriber," Opp. at 10 (emphasis added), but that language does not address the entities *to* which reports were due.[3] Question 48 unambiguously answers that question and makes clear that optimization reports should be provided to the Lead State only. Mot. at 3, 7.

The City asserts that California's Request for Offer ("RFO") and Participating Addenda "confirm" that the City was entitled to optimization reports. Opp. at 11. But City Contract II does not incorporate the RFO or any Participating Addenda entered into between the State of California and Sprint—only the WSCA I contract itself. *See* Sprint RJN Ex. 5 at 1 (incorporating by reference only a "Contract between the State of Nevada on behalf of [the] Western States Contracting Alliance (WSCA) and Sprint Solutions, Inc. identified as RFP/Contract No. 1523"). And in any event, the RFO does not require quarterly optimization reporting to the City, as it provided only that reports be provided to California's "State Contract Administrator" and "may be to the ATRs [Authorized Telephone Representatives at state agencies] at any time upon request." City RJN Ex. 1 § 7.16.2. Nor does Sprint's statement in its WSCA I RFP response that it would "work with WSCA participating States or entities to develop report templates based on their specific requirements," Opp. at 10, serve to extend Nevada's optimization-reporting provision to the City. This language provides only that Sprint will work with WSCA entities to develop mutually acceptable reporting templates, not that it will provide them with mandatory quarterly optimization reports.

---

[3] The definition of "subscriber" in the WSCA I RFP, cited by the City, Opp. at 10, also does not answer this question. Question 48 does, and the "subscriber" definition must be interpreted in a manner that does not conflict with its plain language. *See, e.g.*, *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 986–87 (2015); *Crosby v. HLC Props., Ltd.*, 223 Cal. App. 4th 597, 604 (2014).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

The City also argues that extending the optimization-reporting provisions in WSCA I to political subdivisions is consistent with the "purpose" of cooperative purchasing.  Opp. at 10–12.  But this argument cannot be squared with the City's contemporaneous concession that the CWC, the cooperative purchasing agreement that, for the City, directly preceded WSCA, *excluded* political subdivisions from its optimization-reporting requirement.  *Id.* at 8.  It also is at odds with other provisions of the WSCA I agreement, which the City does not dispute distinguished between the Lead State of Nevada and other entities (including political subdivisions such as the City) in numerous respects—for example, in connection with the submission of administrative fees, *id.* at 13.  The City also points to general contractual language providing that Sprint should supply services to political subdivisions at the same "terms, conditions, and prices," Opp. at 11, but that general language does not modify contractual terms that are "expressly unique to Nevada," as the City admits.  *See id*.[4]

The City further asserts that Question 48's reference to the "Attachment F" administrative fee report form[5] somehow limits the applicability of Question 48 to administrative fee reports.  Opp. at 12–13.  Not so.  Question 48 consists of two questions and two answers.  The questions were: "Please explain what level of detail is required for the reports referenced in Section 3.2.2.2.  Also, should these reports be submitted to the Lead State and/or all the participating WSCA states."  Sprint RJN Ex. 4 at 9.  Nevada answered the first question—regarding the level of detail—as follows: "Please refer to Attachment F—Quarterly Reports."  *Id.*  As the City acknowledges, Section 3.2.2.2 of the RFP referenced four types of reports, including quarterly optimization reports.  Opp. at 12–13; Sprint RJN Ex. 4 § 3.2.2.2.  The RFP did not include template forms as attachments for any of these types of reports other than Attachment F for the administrative fee reports.

The second question and answer in Question 48 addressed a different subject—the entities to which the reports should be provided.  In response to the second question—"Also, should these

---

[4] The City's assertion (unsupported by contract language) that "the optimization provisions are not one of" the terms unique to Nevada, Opp. at 11, directly conflicts with the language in Question 48.

[5] The City incorrectly suggests that Sprint omitted Attachment F from the evidence cited in support of its motion.  To the contrary, Sprint included Attachment F in the copy of the WSCA I RFP it attached to its Request for Judicial Notice in support of its Motion.  *See* Sprint RJN Ex. 4 at 123–25.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1   reports [i.e., the reports in Section 3.2.2.2] be submitted to the Lead State and/or all the participating

2   WSCA states"—Nevada responded:  "Reports should be submitted to the Lead State."  Sprint RJN

3   Ex. 4 at 9.  The plain language of this answer is not limited to administrative reports, but explicitly

4   extends to all of the "reports" referenced in Section 3.2.2.2, including optimization reports.

5          In sum, the quarterly-optimization-reporting provision of the WSCA I RFP, like that of the

6   CWC, does not extend to the City, and no other basis exists for a quarterly-reporting obligation

7   under City Contract II.

8          **C.     <u>City Contract III</u>**

9          The City concedes—as it must—that City Contract III did not require Sprint to provide it

10  with quarterly optimization reports, whether or not requested.  Opp. at 14 ("While WSCA II

11  mandated quarterly optimization reports, City Contract III specified that those reports would only be

12  required upon written request of the City."); *see also* Sprint RJN Ex. 6 at 3.[6]  This forecloses the

13  City's claims under City Contract III, as the City does not allege (nor could it) that it made a specific

14  written request to Sprint for an optimization report that Sprint failed to provide.

15         The City claims that paragraph 98 of its Complaint contains such an allegation, *see* Opp. at

16  13–14, but that paragraph asserts only that "the Carrier Defendants sporadically prepared reports

17  related to rate plan selections, often in response to requests from City departments or representatives.

18  Neither in their substance nor their frequency, though, were these the optimization reports the

19  contracts required to be provided 'routinely' and 'quarterly.'"  Compl. ¶ 98.  This general,

20  conclusory allegation does not pass muster under Rule 9(b) (or even Rule 8); it is not specific to

21  Sprint, does not allege any details of any specific request made by the City to Sprint, and does not

22  allege any specific response by Sprint to any such request.  *See* Section III, *infra*.[7]

23

24  _____

    [6] The WSCA II contract did not in fact require quarterly optimization reports to be provided to the
25  City, for the same reasons that they were not required under WSCA I.  *See* Mot. at 3–4, 7–9.

26  [7] The City incorrectly claims that the state court's order in *State of California ex rel. OnTheGo
    Wireless LLC v. Cellco Partnership, et al.* denying Defendants' demurrers rejected "many of the
27  same" arguments Sprint makes on this Motion.  Opp. at 5.  In fact, it is clear from a review of that
    order, while the Court issued limited, preliminary rulings on some of the underlying group
28  purchasing contract language, it did not consider any of the City's contracts with Sprint, or the
    objective falsity, 9(b), or unjust enrichment arguments at issue here.

## II.    THE CITY FAILS TO DEMONSTRATE OBJECTIVE FALSITY.

The City concedes that "allegations of violations of 'vague,' 'imprecise,' or 'subjective' contractual terms generally do not give rise to objective falsehoods and thus cannot serve as the basis for liability under the CFCA."  Opp. at 15 (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376–77 (4th Cir. 2008)).  But in an attempt to escape this objective falsity requirement, the City misstates the foundation of its CFCA claims, erroneously reads into the relevant contracts an optimization reporting requirement, and mischaracterizes Sprint's legal arguments.

First, the City asserts that it "alleges more than a breach of contract claim."  Opp. at 15.  But the City's theory of liability for each of its claims necessarily depends on a breach of an alleged contractual obligation.  The City describes two potential theories of CFCA liability:  1) that Sprint's claims for payment are false because they impliedly certified *compliance with a contractual obligation*, and 2) that Sprint fraudulently induced the City to contract by falsely promising *compliance with a contractual obligation*.  *See id.*  A party cannot, however, falsely certify compliance with an obligation that does not exist.  Nor can a party fraudulently induce another to enter into a contract based on an alleged false promise to comply with an obligation that does not exist.[8]  If the contracts at issue do not contain the specific reporting obligation the City alleges, then there can be no false certification or fraudulent inducement.  *See United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995) ("Logically, then, any claims for payment based on work that satisfied [the defendant]'s contractual obligations to the [plaintiff] could not have been 'false or fraudulent' within the meaning of the FCA.").

Second, the City attempts to read "objectivity" into imprecise contractual provisions by mischaracterizing them.  The City repeatedly cites an alleged "reporting" requirement and claims that "Sprint's compliance with" the relevant provision "can be objectively assessed" because "Sprint either provided the required reports or it didn't."  Opp. at 16.  But the contracts at issue did not require any reports—only (at most) that Sprint "routinely identify" users in sub-optimal rate plans

---

[8] The only "false statements" that the City cites in support of its claims relate to Sprint's intent to comply with the contractual provisions at issue.  *See* Opp. at 15, Compl. ¶¶ 110, 120–21.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

and "work with the City" to place those users in optimal plans.  *See* Section I.A, *supra*; Mot. at 6–11.  This is a far cry from the type of clear and precise contractual term that can serve as the basis for an objectively false statement or representation.  To the contrary, it is exactly the type of language that courts have found cannot serve as a basis for an objectively false statement as a matter of law.  *See, e.g.*, *Wilson*, 525 F.3d at 383; *United States ex rel. Grupp v. DHL Express (USA), Inc.*, 47 F. Supp. 3d 171, 177–79 (W.D.N.Y. 2014) (dismissing an FCA complaint with prejudice because "[n]o additional detail will transform this contract ambiguity into a fraud claim"), *aff'd*, 604 F. App'x 40 (2d Cir. 2015).  The City cannot base its claims of fraud on its own interpretation of a set of imprecise contractual provisions—"[t]o hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract."  *Wilson*, 525 F.3d at 378; *see also United States ex rel. Yannacopoulos v. Gen. Dynamics Corp.*, 652 F.3d 818, 836–37 (7th Cir. 2011); *Grupp*, 47 F. Supp. 3d at 178; Mot. at 9–11.

Third, the City frames Sprint's objective falsity argument as one focusing on the "reasonableness" of Sprint's reading of a contractual term.  This is incorrect.  Unlike the defendant in *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 n.3 (9th Cir. 1999),[9] Sprint is not asserting here that any "reasonable interpretation" can negate the "falsity" of a claim.  Whether a statement of contractual compliance can be proven objectively false is not a question of the "reasonableness" of any particular interpretation.  Rather, it is a question of whether *the language itself* lends itself to objectivity.  Here, it is the "imprecise nature," *Wilson*, 525 F.3d at 377, of the at-issue contractual language that negates the possibility of an objectively false statement of compliance—the language of City Contracts I and III requiring Sprint (the latter only upon written request) to "routinely identify" users and "work with" the City to place them in the "most optimal" rate plans.[10]

---

[9] *Parsons* is also distinguishable on the ground that it involved an interpretation of a federal regulation, not an imprecise contract provision.  195 F.3d at 462–63.  *Parsons* specifically distinguished its holding from earlier 9th Circuit decisions addressing the scope of false claims liability based on alleged breaches of contract.  *Id.* at 463.

[10] With respect to City Contract II, as discussed in Section I.B, *supra*, the language of the WSCA I contract unambiguously does not require optimization reports to be provided to the City.  At most, the language related to the scope of the reporting obligation in Question 48 is the same type of "imprecise" language that is insufficient to establish objective falsity under the CFCA.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

7

Case No. 2:17-cv-00811-TLN-AC
SPRINT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Finally, contrary to the City's assertions, Sprint nowhere "conceded" that the "lowest cost available" provisions cited by the City are sufficiently precise to form the basis for a CFCA claim. Opp. at 16.  In fact, the City itself does not assert that the "lowest cost" language independently supports a contract or fraud claim.  Instead, the City asserts that the "lowest cost" and "optimization" provisions are "interlocking," and that "[t]aken together, these provisions required Sprint to provide the City with rate plan optimization reports that would permit it to purchase wireless services at the lowest cost available."  Opp. at 1; *see also* Compl. ¶ 4.  As the "lowest cost available" language supposedly reinforces a reporting obligation which, as discussed above, does not exist, the City cannot rely on it to satisfy the CFCA's objective falsity requirement.

In the absence of clear and precise contractual language that can form the basis of an objectively false statement, the City cannot maintain its CFCA claims as a matter of law.

## III.   THE CITY HAS NOT PLEADED ITS CLAIMS WITH PARTICULARITY.

The City cannot plead fraud with particularity merely by alleging, even at length, that Sprint did not provide quarterly optimization reports.  Opp. at 18–19.  Indeed, because Sprint as a matter of law was not obligated to provide such reports to the City, no amount of pleading that Sprint failed to do so can adequately allege fraud by Sprint (or even contract violations).  *See* Mot. at 11–12; Section I, *supra*.  Perhaps because its Complaint focuses on optimization reports (which are not required under the contracts), the City fails to plead at all, much less with specificity, *how* Sprint failed to comply with the actual contract provisions at issue, which speak only to "routinely identify[ing]" users and "work[ing] with" the City on optimization.  The City accordingly fails to plead either the "who," "what," "where," and "when" of an allegedly false statement or "the manner in which [the alleged false statement was] untrue and misleading, or the circumstances indicating that it was false."  *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)), *aff'd*, 678 F. App'x 594 (9th Cir. 2017).  That is, the City does not plead how Sprint failed to "routinely identify" and "work with" the City on optimization—to the contrary, its allegations suggest Sprint did so.  *See* Mot. at 13.  And as noted above, the City nowhere alleges any written request to Sprint for optimization reports or information, let alone that Sprint failed to comply with such a request, which

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

is fatal to its claims under City Contract III.

The City's related contention—that it can avoid its burden to distinguish between Defendants by arguing that they all did the same thing, *see* Opp. at 18–19—could be made by any Plaintiff in a multi-Defendant case and is wrong as a matter of law. "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (per curiam)).

## IV.   THE CITY FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Sprint does not argue, as the City suggests, that a party may not plead in the alternative. Rather, Sprint asserts that the City did not plead the absence of an enforceable agreement and, as a result, cannot plead a claim for unjust enrichment, in the alternative or otherwise. The only case cited by the City, *Klein v. Chevron U.S.A., Inc.*, is not to the contrary. 202 Cal. App. 4th 1342 (2012). The court in *Klein* recognized that the plaintiffs there generally could pursue inconsistent theories of recovery, but could not pursue both unjust enrichment and contact claims given that their complaint exclusively alleged the existence of an enforceable agreement. *Id.* at 1387–90. Similarly, because the City's claim for unjust enrichment is based entirely on Sprint's alleged breaches of written contracts, *see* Compl. ¶¶ 157–66; Opp. at 20, it is properly dismissed at the pleadings stage.

## V.   LEAVE TO AMEND SHOULD NOT BE GRANTED.

The City is not entitled to leave to amend. "When [as here] a proposed 'amendment would be futile, there is no need to prolong the litigation by permitting further amendment.'" *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (quoting *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002)); *Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*, 190 F. Supp. 3d 976, 986–87 (E.D. Cal. 2016). Because the City cannot plead around the unambiguous language of the contracts, and all of its claims rise and fall on its demonstrably erroneous contractual interpretation, no further pleading could possibly state a claim for relief. Nor would amendment be appropriate

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

even if Sprint's motion were granted only on 9(b) grounds.  The City filed the operative Complaint after years of investigation (including document production from Sprint to the City), and presumably did not omit any material allegations that it could now add.

**<u>CONCLUSION</u>**

For the foregoing reasons, Sprint respectfully requests that the Court dismiss (1) each of the City's claims, to the extent based on an alleged obligation to provide "optimization reports"; (2) the City's CFCA claims, for the City's additional failures to plead the requisite "objectivity falsity" and with the particularity required by Rule 9(b); and (3) the City's unjust enrichment claim, in its entirety.

Dated:  August 24, 2017

**BAKER & McKENZIE LLP**
Colin H. Murray
Anne M. Kelts

**WILLIAMS & CONNOLLY LLP**
John E. Joiner
William P. Ashworth

By: /s/ William P. Ashworth
William P. Ashworth
Attorneys for Defendants
SPRINT SOLUTIONS, INC. and
NEXTEL OF CALIFORNIA, INC.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

10

Case No. 2:17-cv-00811-TLN-AC
SPRINT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS